308

DISTRICT TITLE INS. CO. et al. v.
UNITED STATES.
No. 9643.

United States Court of Appeals.
District of Columbia.

Argued May 13, 1948.
Decided June 28, 1948.

Mr. Louis M. Denit, of Washington, D. C., with whom Mr. A. Leckie Cox, of Washington, D. C., was on the brief, for appellants. Mr. Thomas S. Jackson, of Washington, D. C., also entered an appearance for appellants.

Mr. John F. Cotter, of Washington, D. C., Attorney, Department of Justice, with whom Mr. George Morris Fay, U. S. Atty., of Washington, D. C., was on the brief, for appellee. Messrs. William R. Simpson, Jr., General Counsel, National Capital Housing Authority, and Sidney S. Sachs, Asst. U. S. Atty., both of Washington, D. C., also entered appearances for appellee.

Before CLARK and WILBUR K. MILLER, Associated Justices, and McGUIRE, District Judge, sitting by designation.

CLARK, Associate Justice.

This is an appeal from a judgment of the District Court of the United States for the District of Columbia in an action instituted by the Government to recover damages alleged to have been sustained as the result of a breach of contract for the sale of certain land to the Government. The case was tried by the court without a jury, and resulted in a judgment against appellants for $8,789.29, from which they have taken this appeal.

On April 30, 1942, the Alley Dwelling Authority, an agency of the United States, entered into a contract with the individual appellants and others[1] to purchase certain acreage situated in Prince George's County, Maryland, for $78,850. The contract provided that the consideration named should be paid in cash, "as soon as an abstract and certificate of title to said property can be obtained from a title company acceptable to the United States, showing the title to be good and marketable and free from all encumbrances and liens; all expenses of the examination of title, preparation and recording of deed to the United States, to be paid by the United States; all taxes, water taxes, special assessments to date of transfer, whether levied or not, all revenue stamps and notary fees to be paid by the owner; title to be good, free from all encumbrances and liens, and possession surrendered at date of transfer, and adjustment of rents on any existing leases to be made that date."

Shortly after the contract was entered into the Government requested the Title Companies to prepare a certificate of title to the land. An interim certificate was prepared and delivered showing the title to be good of record in the vendors as of May 9, 1942. Then, in compliance with their contract, the vendors executed and deliv-

[1] The individuals aside from appellants who had joined in the contract of sale were not joined as parties defendant in the Complaint filed by the Government for the reason that they were not within the jurisdiction of the District Court

ered a deed dated May 20, 1942, conveying the property to the Government in fee simple, with covenants of general warranty and for further assurances. On July 1, 1942, appellee wrote a letter to the Title Companies with which was enclosed a check for the purchase money payable to the order of the vendors, whereby the Title Companies were instructed to make settlement with the payees when the following conditions had been met:

"(1) the deed has been recorded and the title to the property in fee simple is vested in the United States of America;

"(2) all taxes and assessments, general or special, have been paid;

"(3) all water taxes have been paid; * * *".

By this letter the Title Companies were also requested to prepare a final certificate of title, "with certificate of taxes in the event your certificate of title does not cover this point."

The deed from the vendors was recorded July 2, 1942. Thereafter, the Title Companies issued their final certificate that as of July 2, 1942, title to the land involved was good in fee simple in the United States of America, and that all taxes and assessments had been paid to the date of the transfer of title. Appellee took possession of the property and constructed thereon a housing project, which it is maintaining at the present time.

This property is situated within the jurisdiction of the Washington Suburban Sanitary District Commission,[2] a public corporation organized and existing pursuant to the laws of the State of Maryland. The Commission was empowered by law to assess a "front foot benefit charge" against the property for proportionate costs of the water and sewerage facilities,[3]

according to the classification of the property as agriculture, small acreage, industrial or business, or sub-division property. At the time of sale this property was classified as "small acreage," but after the Government entered into possession it was reclassified as "sub-division" property. In the latter classification the Commission's assessment against this property could have been extinguished, according to evidence from the Commission introduced at the trial, by a lump sum payment of $8,789.29 on January 1, 1943. The trial court found the assessment to constitute a lien on the property, and concluded that the failure of the vendors to pay off this assessment constituted a breach of contract, and that by the failure of the Title Companies to require the discharge of this lien the latter were also liable to the Government.

When settlement of the sale was made, the property was assessed for purposes of taxation at $46,825; on this assessment County and State taxes, miscellaneous taxes, and the front foot benefit charge payable to the Commission (under the small acreage classification), aggregated $862.80. In the settlement these taxes and the benefit charge were adjusted to the date of transfer, and the amount paid by the vendors was $431.43. The applicable statute[4] provides that the owner of any property subject to the benefit charge, regardless of its classification, "may, at his option, *within one year from time said front foot benefit charge is levied,* extinguish the same by the payment in cash, in one sum, of the proportion of the estimated cost of the project, considered as a part of the whole system of which the construction abutting upon his property is a part, represented by the number of front feet which he is assessed, with interest at the rate of six per centum per annum from the date of

---

[2] Hereinafter referred to as the Commission. The Sanitary District comprises most of the area in Montgomery and Prince George's Counties (Maryland) contiguous to the District of Columbia. See § 1411 et seq., Flack's Code of Public Local Laws of Prince George's County (1943). The validity of the Act creating the Sanitary District and the Commission was determined in Dahler v. Washington Suburban Sanitary Commission, 1919, 133 Md. 644, 106 A. 10.

[3] The water facilities serving this property were constructed by the Commission in 1926; the sewerage was constructed in 1931. Each of these improvements were financed by bond issues, which were to be amortized over a period of fifty years from each date through the application of funds realized by the front foot benefit charge, assessed against the property abutting upon these facilities.

[4] § 1428, Flack's Code of Public Local Laws of Prince George's County (1943).

said levy, less any annual payment that may have been made thereon." (Italics added.)

That statute also provides that any property owner whose property is classified under business or industrial, or sub-division, has the option, *"at any time during the life of said benefit charge,"* of extinguishing the benefit charge levied by the Commission by a lump sum payment. (Italics added.) At the trial the secretary-treasurer of the Commission testified that the property in question here could not have been redeemed from the benefit charge on July 9, 1942, when it was classified as small acreage.

In addition, it is to be noted that in 1927 the General Assembly of Maryland amended the statute governing the assessment of the front foot benefit charge by the Commission to provide that the charge should be placed upon the County Treasurer's books annually.[5] It was further provided, by this amendment, that "Said front foot benefit charges from and after January 1st, 1927, shall for all purposes of collection be treated as County Taxes, shall bear the same interest, * * * and all of the law relating to the collection of County Taxes so far as the same is applicable shall relate to the collection of the front foot benefit charge." The Treasurer of Prince George's County testified at the trial of this case that the front foot benefit charge was entered annually on his tax books and collected in the same manner as County and State taxes. He also testified that although a charge was levied upon this property for the year 1943, apparently inadvertently, he had subsequently received authority from the Commission to strike from his tax books the charge for that year, and that no charge had since been entered against this land, for the reason that the Government is exempt from this charge as well as taxes. The secretary-treasurer of the Commission gave similar testimony, and also testified that if the Government should sell this land prior to the termination of the fifty-year period, it will be subject to the annual front foot benefit charge only for the remainder of the period; that it would not be subjected then to any retroactive charge for the years during Government ownership.

We find no escape from the conclusion, as a matter of law, that under the circumstances of this case there was no breach of contract by the vendors nor a failure on the part of the Title Companies to comply with the directions received from the Government in connection with the transfer of title to this property. The vendors had paid the assessment to the date of transfer, as the contract with the Government required. Under the statute it was not possible to discharge the assessment for the remainder of the fifty-year period while the land was classified as small acreage, as it was at the time of the sale. The sum of the liability imposed upon appellants by the trial court was a figure arrived at by the Commission in computing the amount of the lump sum payment required to redeem the land from the front foot benefit charge *under its classification as sub-division property.* But it did not achieve such classification until after the Government acquired possession and utilized the land as the site for a housing project. In our view of the situation prevailing at the time of the sale, the vendors fulfilled their contract.

Counsel for appellee have cited Baker v. Smith and Gottlieb, Inc., 1942, 76 U.S. App.D.C. 403, 132 F.2d 18, as authority for the contention that the front foot benefit charge constitutes a lien and encumbrance upon the land. The per curiam opinion in that case indicates, however, that the contract involved in that case provided that "assessments for improvements * * *, shall be paid by the seller or allowance made therefor at the time of the transfer," and that the property there involved was so classified that it was possible to discharge the assessment for the entire fifty-year period by a lump payment at any time during that period at the option of the property owner. As we have pointed out, no such option existed in the vendors in the present case at the time the sale was made. This Court did say, in the Baker case, that "The Maryland

---

[5] § 1429, Flack's Code of Public Local Laws of Prince George's County (1943).

statute * * * makes this charge a lien upon the property enforceable under the provisions of the law," citing 1927 Laws of Maryland, Chap. 506, § 8, the same statute which we are called upon to construe in the present case.[6] That section provides only that "All front foot benefit charges heretofore levied by said Commission * * * *as the same stood charged by said Commission against the respective properties on December the 31st, 1926,* * * * are hereby declared to be a lien upon the properties against which the same were charged by said Commission and enforceable as a lien under the provisions of the law relating thereto at the time the same were in default." (Italics added.) Excepting that provision,[7] however, the front foot benefit charge is not denominated a lien, otherwise than by implication from the provision that it is to be collected and enforced in the same manner as County taxes, and as we have pointed out above the current charge was adjusted and paid up to the date of transfer.

The judgment of the District Court is reversed, and the cause remanded, with instructions to enter judgment for appellants, who appeared as defendants in the original proceeding.

Reversed and remanded.

---

[6] § 1428, Flack's Code of Public Local Laws of Prince George's County (1943).

[7] That provision in the 1927 amendment which denominated charges levied by the Commission prior to December 31, 1926, as liens apparently was purposeful in a particularity not pertinent to the present litigation. See Judge Parke, dissenting, Washington Suburban Sanitary Commission v. Noel, 1928, 155 Md. 427, 437, 142 A. 634.