**PHILLIPS PETROLEUM CO.**

v.

**McCORMICK.**

**McCORMICK**

v.

**PHILLIPS PETROLEUM CO.**
Nos. 4745, 4746.

United States Court of Appeals,
Tenth Circuit.
March 13, 1954.

George L. Sneed, Bartlesville, Okl. (R. L. Foster, Harry D. Turner and Robert F. Pyatt, Bartlesville, Okl., on the brief) for appellant and cross-appellee.

George L. Reese, Jr., Carlsbad, New Mexico, for appellee and cross-appellant.

Before PHILLIPS, Chief Judge, and MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court of New Mexico awarding damages to appellee, McCormick, for the surrender by the appellant, Phillips Petroleum Company, of an oil and gas lease, without notice to McCormick, who held an overriding interest in the lease. The facts are not in dispute.

In July 1947, McCormick, as the owner of a federal oil and gas lease covering approximately 2,300 acres of the public domain in Lea County, New Mexico, entered into an "Agreement and Option" with Phillips, under which he granted Phillips the option to acquire the exclusive right to explore, produce, treat, handle and market the oil and gas from the leased lands in accordance with the terms of the lease or any extension, renewal or exchange lease, provided such option was exercised within two years from the date of the agreement. In the event of exercise of the option to develop and operate the lease, Phillips was appointed attorney-in-fact to protect and maintain the lease in good standing, and to include it or any part thereof in any adopted unit or cooperative plan of development. The agreement also significantly provided that after the exercise of the option, McCormick would, upon demand, execute an assignment vesting in Phillips "full legal title to the said oil and gas lease or any extension or renewal thereof or any part thereof as to which the option had been exercised," subject to the reservation of 2½ percent overriding royalty to McCormick as provided in the agreement.

While the primary lease was in force and effect, and pursuant to the demand of Phillips as provided in the "Agreement and Option," McCormick executed an assignment of the lease to Phillips; and before the expiration of the primary lease, a new noncompetitive lease was issued to Phillips upon application. While the lease to Phillips did not provide for the 2½ percent overriding royalty to McCormick, Phillips apparently concedes that such interest was carried over into the new lease.

After extensive exploration, including core drilling and attempts to interest other parties in still further drilling or exploration, Phillips determined that the lease was unproductive, and on January

3, 1952, released and surrendered the entire lease to the federal government without tendering a reassignment or giving notice to McCormick. As a result of the surrender, McCormick's overriding interest was extinguished. The lands were subsequently leased to a third party, but Phillips was in no way interested in the transaction and has not since acquired or claimed any interest therein.

McCormick attached both the "Agreement and Option" and the assignment to his complaint, and claimed that the surrender of the lease without notice to him was wrongful, and demanded judgment for the value of the lease. Phillips admitted the material facts as alleged, but denied that the surrender of the lease was wrongful or in violation of any contractual or legal duty owing McCormick. Both parties having moved for summary judgment, the trial court entered judgment for McCormick, leaving only the issue of damages open for proof, pursuant to which it entered the final judgment from which this appeal is taken, D.C., 114 F.Supp. 167.

The first, and we think decisive, issue is whether Phillips owed McCormick a legal duty to notify him of the surrender of the lease in which he held an overriding royalty, and that issue is resolved by a construction of the writings between the parties. There is no allegation or imputation of wrongful or inequitable conduct entitling McCormick to equitable relief as in Probst v. Hughes, 143 Okl. 11, 286 P. 875, 69 A.L.R. 929, Annotations p. 936.

Paragraph 10 of the "Agreement and Option" provided that at any time prior to the exercise of its option to explore and operate the lease, Phillips might terminate the agreement and all rights and obligations thereunder by mailing a notice of such termination to the lessee McCormick; and with immaterial qualifications, the agreement also provided that at any time after the exercise of the option therein granted, Phillips should have the right to surrender to McCormick all of its rights thereunder as to all or any part of the land covered by the agreement by mailing to McCormick an appropriate instrument of release and/or reassignment, together with the payment of $1 in consideration of such surrender.

Paragraph 6 of the subsequently executed assignment of the oil and gas lease granted Phillips the exclusive right to develop and operate the lands covered by the assignment to such an extent and in such manner as assignee "in the exercise of good faith and business judgment shall determine to be proper * * *." Paragraph 7 of the assignment significantly granted Phillips, as assignee of the lease, the "right to release, forfeit and surrender that portion of the above mentioned lease here assigned, and, upon the happening of such event, shall thereupon be fully and completely relieved, released and discharged from all obligations to assignor hereunder and under said lease to the extent that it shall have been surrendered." Phillips relies upon the foregoing provisions of paragraph 7 of the assignment as its authority to surrender the lease as it did, without notice or liability to McCormick.

While exonerating Phillips from any "purposeful wrongdoing," the court nevertheless thought it unreasonable to suppose that by paragraph 7, the parties intended to give Phillips absolute power to destroy McCormick's contractually vested interest in the lease without first tendering reassignment or giving notice to him. The court was strongly of the view that when paragraph 7 was construed in connection with the "good faith and business judgment" requirements of the preceding paragraph 6, it imposed a duty upon Phillips to give appropriate notice to McCormick; that any other construction of the lease would lead to unjust and absurd results. But, the court was not content to rest its decision upon a construction of the provisions of the lease assignment standing alone. It took the further view that the failure to designate one to whom the surrender should be made rendered paragraph 7 ambiguous; and especially did the court think paragraph 7 ambiguous when con-

sidered in connection with the good faith requirements of paragraph 6. Having thus found the lease contract ambiguous in this regard, the court was constrained to consider all of the surrounding facts and circumstances, including the surrender provisions of paragraph 10 of the antecedent agreement; and construing them together as one contract in the light of the surrounding circumstances, interpreted them as requiring reassignment or notice to McCormick in order to protect him against injury in the event of the abandonment of the project.

◼ The canons of construction generally applicable to contracts for the transfer of an interest in land are applicable to assignments of oil and gas leases. See Vol. 3 Summers Oil and Gas, Sec. 544, p. 249. And, one of the first canons of construction is that a contract shall be interpreted as a harmonious whole to effectuate the intention of the parties. 12 Am.Jur. Sec. 241, p. 772; 3 Corbin on Contracts, Sec. 549, p. 100. Every word, phrase or part of a contract should be given a meaning and significance according to its importance in the context of the contract. Basler v. Warren, 10 Cir., 159 F.2d 41.

◼ When the lease assignment is thus viewed as one harmonious whole, we cannot construe the failure of paragraph 7 to provide the manner for the exercise of the right of surrender, as imposing an implied obligation upon Phillips to notify the assignor of the exercise of that right. Although paragraph 7 does not specify to whom a surrender could be made, it is perfectly obvious that such surrender could only be made to the government as lessor, for the lease which was surrendered was not the assignment, but a lease issued directly by the government to Phillips. McCormick's overriding interest was conditioned upon and coexistent with the lease to Phillips, and was therefore extinguished by Phillips' release or surrender of the same.

Nor do we think the exclusive right to develop and operate the lease in the exercise of "good faith and business judgment," granted by paragraph 6, added to or enlarged upon the rights and duties with respect to surrender in paragraph 7. It did not ingraft upon that paragraph a positive obligation which otherwise did not inhere therein. Quite apart from any stipulations in the lease, the law implies a duty on the part of the assignee to exercise good faith with respect to the assignor's retained interest in the lease. See Probst v. Hughes, supra; Hivick v. Urschel, 171 Okl. 17, 40 P.2d 1077; 3 Summers Oil and Gas, Sec. 554, p. 321. But, there is no imputation of bad faith or lack of good business judgment in the exploration and development of this lease. It was unconditionally surrendered after Phillips had expended in excess of $300,000 in its scientific efforts to enhance its value for both the assignor and assignee. It exercised the same good faith and business judgment toward the assignor's interest as it did its own. Neither the contract nor equitable precepts imposed a duty to do more. Certainly it does not create a positive duty where the contract is silent.

◼◼ But, the "Agreement and Option" and the assignment are said to form a part of the same transaction and the two contracts should therefore be construed together as one contract. So construed, paragraph 10 of the agreement is said to reconcilably supplement paragraph 7 of the assignment to impose an expressed duty to tender reassignment or give notice of the surrender. It is of course true that all writings forming a part of the same transaction are interpreted together. Restatement Contracts, Sec. 235(c); Corbin on Contracts, Sec. 549; Hedrick v. Perry, 10 Cir., 102 F.2d 802; Doherty Research Co. v. Vickers Petroleum Co., 10 Cir., 80 F.2d 809; Nau v. Vulcan Rail & Construction Co., 286 N.Y. 188, 36 N.E.2d 106, 110. While the agreement and the assignment are between the same parties and relate to the same subject matter, they do not form a part of the same transaction. The agreement contemplated the assignment without specifying its terms, and although the lease assignment was made

pursuant to the agreement, it made no reference thereto and does not depend upon it for meaning or vitality.

It is a well established rule, applicable to conveyances in New Mexico, that where a deed or instrument of conveyance is delivered and accepted as a performance of the contract to convey, the contract is merged in the deed. Although the terms may vary from those contained in the contract, the deed alone must be looked to to determine the rights of the parties. Norment v. Turley, 24 N.M. 526, 174 P. 999. In the absence of fraud or mistake, all stipulations in the antecedent contract which inhere in the subject-matter of the conveyance; those carried over into the deed and of the same effect; and those of which the subject-matter conflicts with the same subject-matter in the deed, are conclusively presumed to be merged in the final deed of conveyance. Only rights and duties collateral to and independent of the deed survive its execution. Continental Life Ins. Co. v. Smith, 41 N.M. 82, 64 P.2d 377; Maldonado v. Arias, 55 N.M. 223, 230 P.2d 249; Annotations 84 A.L.R. 1008. The stipulations in the agreement with respect to surrender of rights in the lease were not collateral or independent of the deed. The same subject-matter was specifically and fully treated in the assignment without reference to any provisions with respect thereto in the antecedent agreement. We think paragraph 7 of the assignment unambiguous and conclusive of the rights and duties of the parties.

If, however, the assignment, when judged by its four corners can be said to be sufficiently ambiguous to warrant resort to a consideration of all circumstances accompanying the transaction, (Section 235(d) Restatement Contracts) including paragraph 10 of the antecedent contract, we are nevertheless of the view that paragraph 7 of the assignment must be construed not to impose a duty upon Phillips to tender reassignment or notify McCormick of the surrender. In our view, the requirement of notice in paragraph 10 of the antecedent agreement, and the omission of it in paragraph 7 of the assignment, indicates a deliberate intention of the parties not to impose that duty upon the assignee in the assignment. Certainly, failure to carry that duty forward in the assignment creates no presumption of an intention to leave it to implication.

It is therefore our conclusion that McCormick is not entitled to any relief against Phillips, and the judgment is reversed with directions to enter judgment accordingly.