CITY OF DE PERE, Respondent, vs. PUBLIC SERVICE COMMISSION, Appellant.

*March 1—April 6, 1954.*

322

324

For the appellant there were briefs by the *Attorney General* and *William E. Torkelson,* chief counsel for the Public Service Commission, and oral argument by *Mr. Torkelson.*

For the respondent there was a brief by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *J. Robert Kaftan.*

FAIRCHILD, C. J. Respondent, city of De Pere, assumes that the charge in question of $1.25 a front foot imposed, in addition to a tapping charge, upon all property owners desiring to make new connections to a main for which they have not paid or for which they have not paid a special assessment, is a tax or an assessment. "Taxes," it was said in *Fitch v. Wisconsin Tax Comm.* 201 Wis. 383, 387, 230 N. W. 37, "are the *enforced proportional contributions* from persons and property, *levied by the state by virtue of its sovereignty* for the support of government and for all public needs. The state demands and receives them from the subjects of taxation within its jurisdiction that it may be enabled to carry into effect its mandates and perform its manifold functions, and the citizen pays from his property the portion demanded, in order that, by means thereof, he may be secured in the enjoyment of the benefits of organized society."

First, the charge in the instant case is not imposed by the city in the exercise of its sovereign power delegated to it by the state. It is imposed "on behalf of the water utility," *i. e.,* in the city's proprietary capacity. In *Packet Co. v. Keokuk,* 95 U. S. 80, 85, 24 L. Ed. 377, where a city ordinance prescribed certain fees for use of a wharf in proportion to the tonnage of vessels used, it was said, "The character of the service is the same whether the wharf is built and offered

for use by a state, a municipal corporation, or a private individual; and, when compensation is demanded for the use of the wharf, the demand is an assertion, not of sovereignty, but of a right of property." In *Pabst Corp. v. Milwaukee,* 190 Wis. 349, 356, 208 N. W. 493, it was said: " 'The function of a city in selling and distributing water to its citizens is of a private nature.' *Piper v. Madison,* 140 Wis. 311, 314, 122 N. W. 730. In fixing the rates to be charged to the citizens of *Milwaukee* the common council was acting for the city in its private or proprietary capacity. The fixing of the rates was a necessary part of the business management of the private or proprietary undertaking on which the city embarked when it established its own water plant." Again, in *Pabst Corp. v. Milwaukee,* 193 Wis. 522, 527, 213 N. W. 888, 215 N. W. 670, it was said: "When the city is collecting its water rates it is acting in its proprietary capacity and not as a governmental agency of the state."

Second, the charge is obviously not proportional, since the $1.25 running-foot charge is not exacted from those persons who, before August 12, 1947, connected to mains laid before 1941, but only to those connecting after that date to those mains. Further, since the charge is to be made upon a property owner only when and if he wishes to "tap on" to such main at a time subsequent to August 12, 1947, it follows that the charge is not to be enforced as a tax because the necessity for payment does not arise unless and until the individual requests the public authority to make the connection to the main. So long as the service is not asked, the money will never be demanded. *Stewart v. Verde River Irrigation & Power Dist.* 49 Ariz. 531, 545, 68 Pac. (2d) 329.

Respondent argues more strongly that it is an assessment. An assessment is in the nature of a tax inasmuch as it is an enforced proportional contribution imposed by authority of the sovereign power. For the reasons just set forth, the

charge involved here does not meet those tests when applied to an "assessment." An assessment differs from a general tax, however, in that it is imposed to pay for an improvement which benefits a specific property within the political division imposing it. For that reason an assessment is always made against the land in proportion as it enhances the value of that land, and it fixes a lien on the land. In the instant case, it was stipulated that the charge was not carried on the books of the city as a special assessment against specific property which abuts the main, the payment for which is proposed to be recouped. Neither is it shown in the record as a lien against the real estate.

The element of notice to the property owner is fundamental in imposing an assessment. *Boden v. Lake,* 244 Wis. 215, 12 N. W. (2d) 140. In the instant case, the first notice of the $1.25 front-foot charge is given to a property owner when he desires to be connected to the water main.

In its opinion on rehearing, the commission said that:

"The commission has no authority to take from the city council any power conferred upon it by statute, and the order was not so intended. The city council is free to make assessments against abutting property owners for water-main construction in so far as the statutes authorize such action. Its authority to do so must, however, be found in the statutes and cannot be increased or decreased by the filing of rules with the commission voluntarily or under the compulsion of an order."

If the charge here were an assessment, the assessment statutes of ch. 62, Stats., would apply.

It is not within the jurisdiction of the commission to determine whether an assessment is void, and that is not the question on this appeal. If the charge were an assessment, then, even though void, the forum for attack would be in the courts. But the charge fails entirely to answer the requirements of

a "tax" or an "assessment" and manifestly is a charge for a service by a public utility. A consideration of the characteristic elements of an assessment leads to the conclusion that the charge made in ordinance No. 332 for connecting to water mains laid before 1941 is not an assessment at all. It is a charge which is imposed only against the *person* desiring to connect to a water main. In other words, in order to get water, a person whose property abuts a main laid prior to 1941 and who did not tap onto the main before August 12, 1947, has to pay the $1.25 front-foot charge. The ordinance is designed to prevent a tapping permit from being issued without payment of this charge by the applicant. The charge is a part of and is directly connected with the tapping service, and the tapping service is dependent upon it. It is a voluntary fee "in the sense that the party who pays it originally has, of his own volition, asked a public officer to perform certain services for him, which presumably bestow upon him a benefit not shared by other members of society." *Stewart v. Verde River Irrigation & Power Dist., supra* (p. 545).

In general, authorities agree that "water rates, charges, or rents" are not taxes. 16 McQuillin, Mun. Corp. (3d ed.), p. 7, sec. 44.02. Likewise, charges for connection to or use of a sewer are generally held not to be "taxes." 64 C. J. S., Municipal Corporations, p. 273, sec. 1805. See also 48 Am. Jur., Special or Local Assessments, p. 565, sec. 3.

As set forth in the preceding statement of facts, ordinance No. 332 imposing the charge in question was submitted to the Public Service Commission as a rule of a water utility of the city of De Pere. The rule was not approved by the commission but placed on file subject to investigation and complaint. Sec. 196.19, Stats., provides in part:

"(1) Every public utility shall file with the commission schedules showing all rates, tolls, and charges which it has established and which are in force at the time for any service performed by it within the state, or for any service in connec-

tion therewith or performed by any public utility controlled or operated by it. . . .

"(2) Every public utility shall file with and as a part of such schedule all rules and regulations that, in the judgment of the commission, in any manner affect the service or product, or the rates charged or to be charged for any service or product, . . ."

Sec. 196.20, Stats., reads in part as follows:

"(1) The rate schedules of any utility shall include all rules applicable to the rendition or discontinuance of the service to which the rates specified in such schedules are applicable. No change shall be made by any utility in its schedules except by filing the change as proposed with the commission. . . ."

The charge of $1.25 per running foot described in the statement of facts, being for service to customers, is subject to review by the Public Service Commission; and the charge for the service "to be rendered . . . shall be reasonable and just." It follows, of course, that "every unjust or unreasonable charge for such service is prohibited and declared unlawful." Sec. 196.03, Stats.

Sec. 196.37, Stats., empowers the commission as follows:

"(1) Whenever upon an investigation made under the provisions of chapters 196 and 197 the commission shall find rates, tolls, charges, schedules, or joint rates to be unjust, unreasonable, insufficient, or unjustly discriminatory or preferential or otherwise unreasonable or unlawful, the commission shall determine and by order fix reasonable rates, tolls, charges, schedules, or joint rates to be imposed, observed, and followed in the future in lieu of those found to be unreasonable or unlawful.

"(2) Whenever the commission shall find any regulations, measurements, practices, acts, or service to be unjust, unreasonable, insufficient, preferential, unjustly discriminatory, or otherwise unreasonable or unlawful, or shall find that any service is inadequate, or that any service which can be reasonably demanded cannot be obtained, the commission shall

determine and by order fix reasonable measurements, regulations, acts, practices, or service to be furnished, imposed, observed, and followed in the future in lieu of those found to be unreasonable, inadequate, or otherwise unlawful, and shall make such other order respecting such measurement, regulation, act, practice, or service as shall be just and reasonable."

By reason of the change from the policy of the city of De Pere prior to 1941 of constructing mains without assessment and not requiring payment for main extension of less than 100 feet to the policy set out in ordinance No. 332, dated August 12, 1947, requiring new users of water to pay $1.25 per running front foot for service, there exists a situation in which a prospective customer improving a lot adjacent to a street where the cost of the water main was absorbed by the utility would be obliged to pay, in addition to a tapping charge, $1.25 per running front foot for service; whereas his neighbor who was previously located and served would have paid only a tapping charge for such service. The charge is a device whereby an attempt is being made to now recoup cost of water mains laid in the past at the expense of the utility, which recoupment was and is to be made by a charge made solely against those who were connected after August 12, 1947, while those connected before pay nothing except as reflected in the water rates. Further, during the period in which the cost of mains was paid by the utility, a rate base was established considerably in excess of what would have resulted had the statutory special-assessment policy been used. Rates for water service reflect and will continue to reflect such higher rate base. Therefore a new customer would be compelled to pay the higher rate thus established as well as the $1.25 per front-foot charge.

The commission found as a fact "that the practice of the De Pere water department in making a charge other than a so-called tapping charge where property is connected to

water mains laid prior to 1941 is unreasonable and is unreasonably discriminatory and should be discontinued."

We consider that the charge of $1.25 per running front foot in ordinance No. 332 of the city of De Pere is, as a matter of law, neither a tax nor an assessment; but that it is a charge for service over which the Public Service Commission has jurisdiction. We further consider that the finding of the Public Service Commission that the charge is unreasonable and discriminatory as applied in case of present connections to water mains laid prior to 1941 must be sustained. This determination controls the result in this case, and we will not carry the opinion any further.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment confirming the decision of the commission.