MORRIS *v.* EHLERS ET AL.

[No. 206, October Term, 1955.]

24

*Decided August 10, 1956.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Harry Bonnett,* with whom were *Reuben Bonnett* and *Bonnett & Bonnett* on the brief, for appellant.

*Leonard T. Kardy,* with whom were *Neel & Kardy* on the brief, for appellees.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment for the defendants in

a suit brought by the appellant on one clause of a contract for the sale of land lying in that portion of the Washington Suburban Sanitary District which is located in Montgomery County. The suit arose out of the following paragraph of the contract of sale, dated June 30, 1954, between the appellees as sellers and the appellant as purchaser.

"9. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the Treasurer of the County, except that assessments for improvements completed prior to the date hereof, whether assessment therefore [sic] has been levied or not, shall be paid by the Sellers or allowance made therefore [sic] at the time of transfer."

The property covered by the contract of sale consisted of 26.546 acres and was part of a tract of slightly more than 32 acres, which were owned by the sellers. Several years prior to the execution of the contract of sale the Washington Suburban Sanitary Commission (the "Commission") had installed water and sewer mains in a street upon which the 32-acre tract abutted. Front foot benefit charges had been determined and levied against this tract or parts of it. The records of the Commission listed five separate charges against what the Commission designated as three different parcels. These designations appear to have been made by the Commission for its own purposes of identification, and the installations appear to have been made at three different times. One of the parcels was made subject to a charge only for water; the other two were subjected to charges for both water and sewer mains. The aggregate of the five annual front foot benefit charges against the three properties was $127.60.

The amount claimed by the plaintiff-purchaser on account of assessments made by the Commission is $3,420.79. He bases this claim upon an estimate made by an official of the Commission, who was called as a witness. The appellant says that this witness "testified * * * that the special assessments levied on the said ground as of the date of the settlement [under the contract of sale] were $3,420.79." We shall consider this witness' testimony and the question of amount

later on. The appellant claims that the appellees are liable for the whole of this amount. The appellees deny liability entirely, and also dispute the amount if they are under any liability at all. At the time of settlement under the contract the sum of $3,500 was placed in escrow to await determination of the controversy. When suit was brought, the defendants demurred to the declaration, but their demurrer was overruled. The case later went to trial and resulted in a verdict and judgment for the defendants.

The first controversy is over the meaning and effect of the provisions that "assessments for improvements completed prior to the date hereof, whether assessment therefor has been levied or not, shall be paid by the Sellers or allowance made therefor at the time of transfer." The appellant contends that the entire front foot benefit charges for water and sewer mains made against the property constitute such an assessment, and the appellees deny this. There is no doubt that the improvements had been installed before the date of the contract.

The authority of the Commission to impose front foot benefit charges, such as those here involved, is contained in the Acts of 1927, Chapter 506, Section 8, now codified as Section 74-36 of the Montgomery County Code of 1955 (Section 130-28 of the 1950 Edition) and it is also contained in Section 1571 (a) of the Prince George's County Code of 1953. This statute is at the foundation of the appellant's case. It is not, however, cited in his brief, which also omits any reference to any Maryland cases and hence does not mention any of the three cases which have considered this statute and its predecessor. In *Dahler v. Washington Suburban Sanitary Commission,* 133 Md. 644, 106 A. 10, in *Washington Suburban Sanitary Commission v. Scrivener,* 153 Md. 68, 137 A. 492, and in *Washington Suburban Sanitary Commission v. Noel,* 155 Md. 427, 142 A. 634, the charges assessed by the Commission against property abutting on streets where water and sewer mains are installed are treated as assessments. The statute provides in part:

"Immediately upon the commencement or within twelve months after completion of a water supply or sewerage project the commission is empowered and directed to fix and levy

a benefit charge upon all property abutting upon said water main or sewer, in accordance with the classification, and shall in writing notify all owners of said properties into which class their respective properties fall and the charge determined upon, * * *. * * * The classification of any property as made by the commission shall be final, subject only to revision at said hearing. Said benefit shall be levied for both water supply and sewerage construction and shall be based for each class of property upon the approximate cost of said construction as an integral part of the whole system and the number of front feet abutting upon the street, lane, road, alley or right of way in which the water pipe or sewer is placed."

(Under Chapter 118 of the Acts of 1955, effective June 1 of that year (Montgomery County Code, 1955 Edition, Section 74-42.1) the Commission is empowered to modify assessments under certain conditions.)

The statute also provides for four different classifications of property subject to these charges and permits different rates applicable to all properties in each of the different classifications.

Under Section 74-37 of the Montgomery County Code of 1955 (Section 130-29 of the 1950 Edition) collection on an annual basis of front foot benefit charges assessed by the Commission is put on the same basis as the collection of county taxes.

As one ground of defense the appellees rely upon the fact that the amount of the asserted assessment could not have been paid off by them in a lump sum at the time of their transfer of the property. They also rely, perhaps more heavily, upon testimony that a custom exists in Montgomery County under which only annual current instalments of front foot benefit charges made by the Commission are adjusted to the date of transfer and under which no allowance is made for the unpaid portion of the original assessment.

Each of the assessments here involved is stated to be payable over a period of forty years. The purpose of this is to conform more or less with the period for which bonds issued to finance the improvements are to run. The earliest of the charges here involved ran for forty years from January 1, 1948,

the second from January 1, 1949, and the third from January 1, 1951.

The testimony of an official of the Commission showed that the appellees could not have paid off the balance of these assessments at the time of the settlement. They could have done so within one year after the original determination or the date of actual imposition of each of the several amounts chargeable against this property (there being some doubt as to which), but on either basis the time had passed. The privilege of prepayment of the unpaid balance is allowed as to certain other classifications of property after the first year, but there is no such provision with regard to "Small Acreage" property. A reclassification of this particular tract to one of these other classifications would make it possible to pay off the entire amount, but that seems immaterial for present purposes. Cf. *District Title Co. v. United States,* 169 F. 2d 308, 83 App. D. C. 335.

If the aggregate benefit charges made by the Commission against the appellees' thirty-two acre tract constituted assessments, we are unable to see how the fact (if it be one) that, after the first year, they could not be paid off by way of anticipation of future instalments made them any the less assessments. It is true that under the practice of the Commission shown by the testimony, the sellers could not have paid these assessments at the time of transfer. There was nothing, however, to prevent their complying with the other alternative, which was to make an allowance for them.

The facts that no assessment of the 26.546 acres purchased by the appellant was ever made in his name and that he himself never paid any front foot benefit charges based thereon, seem to us wholly immaterial insofar as the existence of an assessment against the land is concerned.

Whether these charges constituted liens against the property for the full amount thereof from the dates when they became final under the statute, or whether they constituted liens only as and when annual charges were entered by the Commission's agents on the books of the County Treasurer, is a question which we are not called upon to decide in this case. The United States Court of Appeals of the District of Colum-

bia in *District Title Co. v. United States, supra,* appears to have taken the view that they became liens only on the basis of annual instalments, and the Municipal Court of Appeals for the District of Columbia of course accepted the view in *Union Realty Co. v. Ahern,* 93 A. 2d 84. With great respect for the views of those Courts, we are not to be understood as expressing our agreement or disagreement with the *District Title Co. Case* on this matter of the construction of a Maryland statute.

In accordance with the *Dahler, Scrivener* and *Noel* cases above cited, we are of the opinion that the aggregate charges for which the Commission has imposed annual front foot benefit charges are assessments. Such being the case, is there anything which would prevent their being comprehended within the term "assessments for improvements completed * * * whether assessment therefor has been levied or not"? The appellees answer "yes", and rely on their testimony as to local custom.

Perhaps the leading case in Maryland on the subject is *Applestein v. Royal Realty Corp.,* 181 Md. 171, 28 A. 2d 830, which succinctly states the rule (at 181 Md. 173, 28 A. 2d 831) : "The true test is that there must be in the contract something doubtful which can be explained by a usage or custom. If the contract is plain, evidence cannot be received to contradict it. If the contract is made with reference to a usage and therefore omits the special particulars which are supplied by that usage, those particulars can be supplied by proof of the usage." For a general discussion of the matter, see also *Williston, Contracts,* Rev. Ed., Vol. 3, Sections 607-609, and *Restatement, Contracts,* 247.

We think that in the present case the testimony as to custom, if given effect, would not explain but would directly contradict a term of the contract and that it therefore cannot be given effect.

Our view with regard to the interpretation of the contract is reinforced by one other document which is included in the record. That is the proposed contract of March 15, 1954, which the appellant signed, but which the appellees declined

to accept. That proposed contract was on a printed form, from which we may infer that it is in rather general use. One paragraph contains a sentence which is virtually identical with the first sentence of Paragraph 9 of the executed contract. The proposed form contains a succeeding sentence which reads as follows: "If the property is serviced by the Washington Suburban Sanitary Commission, annual benefit charges of said Commission are to be adjusted to the date of transfer and assumed thereafter by purchaser." There is no corresponding provision in the executed contract. The learned trial judge took its absence as an indication of fraud or of something very close to it. So far, however, as the record discloses, the appellees did not set up fraud as a defense, and they went through with the contract with full knowledge of the plaintiff's contention and counsel for the respective parties entered into a stipulation that $3,500 should be held out of the sale price of the property and retained by the title insurance company pending the determination of litigation to settle the question, which the seller was to institute promptly in the Circuit Court for Montgomery County. This case was instituted pursuant to that stipulation. The stipulation was without prejudice to rights of either party. It is also true that both parties had the advice of their own counsel before executing the contract, which was in typewritten form. The contract itself bears evidence of having been carefully studied before being executed. Changes made on the first page were carefully initialed apparently by the sellers and by the purchaser's counsel, and the same is true of an entire clause on the second page, which was eliminated. The signatures of the sellers are witnessed by their counsel. We do not think that the record evidence sustains the trial judge's characterization of this change in the form of the contract. The fact that it was made does, however, point up a material difference between the contract as executed in June and as proposed in March. If it had been finally adopted in the earlier form, it would have been in accord with the custom which the defendants' witnesses said prevailed in Montgomery County.

We hold that under the terms of the contract the sellers are required to make an allowance for the unpaid front foot bene-

fit assessments made by the Commission for improvements completed before the execution of the contract.

The amount of the allowance which should be made is not, however, so simple as the appellant seems to think. There are two major questions which must be answered in order to arrive at the proper amount. These are: (1) what was the aggregate amount of the charges apportionable or attributable to the property purchased by the appellant?; and (2) how much should the sellers have allowed to the purchaser at the time of settlement on account of these charges which then extended and still extend for many years into the future?

After careful study of the record, particularly the testimony of Mr. Ryon, the Supervisor of Assessments for the Commission, we are unable to determine the basis of his computation of the front foot benefit charges and assessments against that portion of the thirty-two acre tract which the appellant purchased. A letter which he wrote to counsel for the appellant containing his computation may show its basis; but as the letter was excluded from evidence and no proffer of its contents was made, we cannot tell what it would have shown. On the record before us we cannot reconcile his figures with those given in his letter of June 26, 1954 (which was admitted in evidence) and with the fact that the sellers retained a portion of the original tract against which the greater part of the front foot benefit charges in effect at the date of the contract had been assessed.

The record does show that the sellers retained a tract of 5.629 acres which had a frontage of 403 feet out of a total of 415 feet, against which front foot benefit charges were assessed for both water and sewer mains in the aggregate amount of $92.50 a year, running from January 1, 1948. These charges were computed at the same rate for each service, which was 18¢ a foot for the first 150 feet, 9¢ a foot for the next 150 feet, and 5¢ a foot for the excess over 300 feet. Mr. Ryon allocated 12 feet, at 18¢ a foot for water and 18¢ a foot for sewerage, to the tract purchased by the appellant; but he himself was apparently uncertain whether he should have based his figure on an 18¢ or a 5¢ a foot charge. That is the only one of his three calculations of charges

against the property bought by the appellant for which we find the arithmetical explanation clear; and the reason for his choice of figures even for that one is not clear.

We do not intend to state or imply any criticism of Mr. Ryon or of his basis of allocation of charges; but in the absence of any satisfactory showing of how or why it was arrived at, we are not willing to accept it as controlling in this case. There may be facts not now apparent to us which would change this view. If so, they may be developed on the retrial of the case.

In our view of the contract, we are concerned only with assessments made on or before June 30, 1954, for improvements completed prior to that date. They were as follows, as we understand Mr. Ryon's testimony and his letter dated June 26, 1954, as of January 1 and June 30, 1954, using the Commission's identifying designations of the frontage in respect of which the several assessments were made.

| Parcel | Annual Charges | Years to Run | Aggregate Unpaid Assessment |
|--------|---------|------|------------|
| 190B/3 | $ 92.50 | 34 | $3,145.00 |
| 190C/3 | 9.25 | 35 | 323.75 |
| 190E/3 | 25.85 | 37 | 956.45 |
| Totals | $127.60 | | $4,425.20 |

His computation of the taxes chargeable against the land bought by the appellant, stated on a comparable basis, appears to be as follows:

| Parcel | Annual Charges | Years to Run | Aggregate Unpaid Assessment |
|--------|---------|------|------------|
| Part of 190B/3 | $ 4.32 | 34 | $ 146.88 |
| 190C/3 | 32.30 | 35 | 1,130.50 |
| 190E/3 | 57.93 | 37 | 2,143.41 |
| Totals | $94.55 | | $3,420.79 |

Assuming for purposes of calculation (but not agreeing) that annual charges of $4.32 (instead of $1.20) should be

attributed to that portion of Parcel 190B/3 bought by the appellant, no reason is apparent why the appellees did not remain liable to the Commission for the balance of $88.18 of the annual charges assessed against the part of that parcel which the appellees retained. If that is so (and that will be a question to be determined on the new trial), and if Mr. Ryon's allocation of $94.55 in current annual charges against the land bought by the appellant is also correct (which is another question to be determined on the new trial), the aggregate annual charges on the whole thirty-two acres would be $182.73, instead of $127.60, and the aggregate unpaid assessments would apparently be $6,418.91 instead of $4,425.20. How such a result could properly be achieved is not shown; nor (so far as we can see) does the record disclose how, on Mr. Ryon's computation, it could be avoided. If some part of the assessment against the 5.629 acres retained by the sellers ought to be transferred to the 26.549 acres acquired by the purchaser, that is left to the imagination. Nor can Mr. Ryon's allocation be arrived at by multiplying the number of front feet subject to the various assessments by the prorated or average water and sewer charges set forth in the course of Mr. Ryon's testimony.

In our view, the sellers (the appellees) are required under the contract to make an allowance as of the date of settlement to the purchaser in respect of such assessments existing on June 30, 1954, the date of the contract, for improvements then completed as were then applicable to that portion of the entire tract which they sold to the appellant. Subject to correction in the light of any further facts which may be developed at the new trial, it would appear that the amount of the front foot benefit charges and assessments existing on June 30, 1954, allocable to the tract purchased by the appellant would be the difference between the aggregate amount of such charges and assessments then existing against the entire thirty-two acre tract and the amount of such charges and assessments then existing which remains chargeable against that part of the tract retained by the sellers.

The contract requires the appellees to pay or make an allowance for assessments for improvements completed before

the date thereof, whether or not such assessments have then been levied. This contemplates that the assessments shall have been made on or before that date and does not cover any additional assessments which may be made thereafter, whether as a consequence of the sale or otherwise. We take it that Mr. Ryon's testimony was directed to what the assessment would have been following, or as a result of, the transfer. On the record before us we are not prepared to accept as correct the assertion made in the appellant's brief that Mr. Ryon testified "that the special assessments levied on the said ground as of the date of settlement were $3,420.79." That will be for determination on the new trial.

If the facts prove to be that the 403 feet out of the 415 feet in Parcel 190B/3 retained by the sellers remained subject to the existing assessment in effect on June 30, 1954 and that the assessment against those 403 feet was in the amount of $91.30 per year ($92.50 minus $1.20) and was payable over a period of 34 years, amounting to $3,104.20 in the aggregate for that period, then the aggregate amount of the current annual charges applicable to the land sold to the appellant would be $36.30, and the aggregate unpaid amount of the assessments against the appellant's tract would be $1,321.00 (being the sum of 34 × $1.20, or $40.80, and $323.75 and $956.45).

The questions of fact above suggested will, of course, be determinable by the Circuit Court. We have expressed our view as to the method of computation to be followed in the new trial for which we find it necessary to remand the case in determining the amount of the assessments against the property sold to the appellant for which allowance should be made by the appellees.

We shall now turn to the other major question bearing on the amount of allowance to be made as of the date of settlement on account of outstanding assessments at the date of settlement chargeable against the land bought by the appellant, for improvements completed by the Commission prior to the date of the contract of sale. It is true that if the sellers had elected to pay off the whole amount in advance, as they could have done during the first year after the charges were

levied, they would have had to pay the full amount plus some accrued interest and perhaps also plus an additional amount by way of margin to protect the Commission against possible increased costs. That, however, was not done. There is no readily apparent reason why the appellees should make an allowance in excess of such sum as may be necessary to make the appellant whole as to the assessments against the land purchased for which the appellees may be liable. The statute itself suggests a measure by its provisions granting an option to owners of business or subdivision property to pay off the remaining balance against their properties at any time. Under Section 74-36(f) of the Montgomery County Code of 1955 (Section 130-28(f) of the 1950 Edition), the owner of property classified as business or industrial or as subdivision may at any time pay off the benefit charge and "extinguish the same by payment in cash of an amount which, if put at interest at three and a half per cent, compounded annually, would yield an annuity equal to the annual assessment at the base rate and disregarding any allowance for excess, for the period for which said benefit charge has yet to run."

An allowance to the purchaser on a basis such as this would seem to be all that he could justly insist upon. Whether three and one-half per cent is the proper rate upon which to base the computation is not before us, and we think that the Circuit Court should determine a fair rate based upon the return which might reasonably have been used as of the date of the settlement as proper for purchasing an annuity or annuities which would pay off the share of the assessments apportionable to land purchased by the appellant as and when the future instalments fall due. Interest should also be allowed on the amount fixed for the purchase of an annuity or annuities from the date of settlement to the date of final judgment. The correct amount of the assessments to be apportioned to the land purchased by the appellant is also to be determined by the Circuit Court.

In accordance with the foregoing views the judgment will be reversed and the case remanded for a determination of the amount properly allowable to the appellant on account of the unpaid balance of the assessments against the land sold made

by the Commission for improvements completed prior to the date of the contract.

*Judgment reversed, with costs, and case remanded for further proceedings not inconsistent with this opinion.*