427 P.2d 668

**H. D. LEIGH, Plaintiff-Appellee,**

**v.**

**Sidney S. HERTZMARK and Hannes H. Parnegg, Defendants-Appellants.**

**No. 8129.**

Supreme Court of New Mexico.

March 27, 1967.

Rehearing Denied May 26, 1967.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, for appellants.

Hines & Mistretta, Albuquerque, for appellee.

## OPINION

HENSLEY, Chief Judge, Court of Appeals.

In the trial court the plaintiff sought and recovered a judgment against the defendants in the sum of $1,863.36.

The cause of action arose out of certain negotiations and a contract whereby the defendants agreed to sell to the plaintiff thirty-two lots in an addition to the City of Albuquerque for the sum of $1,-850.00 per lot. The Purchase Agreement, or Binder, dated December 28, 1962, provided that "buyer to pay $1,850.00 per lot and buyer to assume water and sewer assessments at not more than $216.84 per lot. Seller to release eight lots in a row at once and seller to release the remaining twenty-four lots at $1,850.00 per lot, plus not more than $216.84, plus interest, per lot for water and sewer as needed within one year or sooner." On January 7, 1963, the attorney for the sellers prepared and the parties signed a real estate contract requiring the buyer to pay $1,850.00 per lot plus all taxes and other charges against the real estate and water and sewer assessments of the City of Albuquerque. It is undisputed that the buyer in January and February, 1963, was required to pay $58.23 per lot on the thirty-two lots over and above the $216.84 per lot to the City of Albuquerque. From the judgment in favor of the plaintiff representing $58.23 per lot for thirty-two lots, or $1,863.36, the defendants now appeal.

The appellants' initial attack on the judgment of the trial court is that the court erred in finding them liable to the appellee under the contract and that Finding of Fact No. 4 by the trial court was not supported by any evidence.

The appellants' do not dispute the wording of the Purchase Agreement. They

agree that the buyer assumed the obligation to pay water and sewer assessments at not more than $216.84 per lot. The appellants argue that the Purchase Agreement did not affirmatively state that the sellers would be liable for any assessments in excess of that amount and therefore it created no liability as to them. The sellers were realtors. The buyer was a builder. The lots conveyed were to be developed with new construction. The language employed in the Purchase Agreement clearly relieved the buyer from any water and sewer assessments on a given lot in excess of $216.84 if the lot was developed within one year. The charge was made against all lots within sixty days following the Purchase Agreement. The sellers say that to burden them with the $58.23 charge is to rewrite the agreement and to supply an implication not intended by the parties. The sellers knew of the water and sewer lines that had been placed adjacent to the lots and were familiar with Policy 7(d) of the City of Albuquerque which made the final payment due and payable when connection was made to the lines. The question of liability with respect to improvement assessments or charges as between vendor and purchaser has been treated in an annotation appearing in 59 A.L.R.2d 1044. There the annotator at page 1046 stated,

"The question * * * is chiefly one of construction of various provisions in · the contract of sale or exchange, so that the cases do not lend themselves to summarization or to the formulation of any rules of general application."

Further, at page 1047 in discussing liability under various contractual provisions this was said,

"The result is, of course, a matter of the proper interpretation of the language used, in the light of the facts and circumstances appearing and no general principles can safely be laid down."

See cases there cited. Here a ceiling on the obligation of the buyer was fixed by agreement of the parties. The very fact that a ceiling was fixed implies that the parties were aware of the possibility that a different charge in a greater amount would be demanded. To accept the appellants' theory no one would be liable. We conclude that the obligation to pay the excess over $216.84 must by every reasonable implication be that of the sellers.

As a part of the appellants' first point there is also an attack on Finding of Fact No. 4 in the Decision of the trial court. This finding was as follows:

"4. That by inadvertence the said provision providing for a limit of $216.84 per lot for water and sewer assessments to be assumed by the Plaintiff was omitted."

The undisputed evidence established. that the real estate contract was

drawn by the agent for the appellants. The appellant, H. H. Parnegg, called as an adverse witness, testified as follows:

"Q. Did you deliver to the person who prepared the real estate contract, which is marked plaintiff's exhibit 5, did you deliver to them a copy of the real estate binder?

"A. Yes.

"Q. From which they were to take their information?

"A. Yes."

The general rule is that the findings of fact and judgment of the trial court will not be disturbed if supported by substantial evidence. Candelaria v. Miera, 13 N.M. 360, 84 P. 1020, and numerous decisions thereafter including Manufacturers and Wholesalers Indemnity Exchange v. Valdez, 75 N.M. 363, 404 P.2d 562. There was evidence to support Finding of Fact No. 4. In City of Clovis v. Southwestern Public Service Co., 49 N.M. 270, 161 P.2d 878, 161 A.L.R. 504, we quoted with approval a statement as follows:

"Moreover, the general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in course of the same transaction, are, in the eyes of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance."

See also Phillips Petroleum Co. v. McCormick, 211 F.2d 361 (10th Cir. 1954)), where the following statement was made. "It is of course true that all writings forming a part of the same transaction are interpreted together." See further, 3 Corbin on Contracts § 549 (1960); Restatement, Contracts § 235(c) (1932). In Maldonado v. Arias, 55 N.M. 223, 230 P.2d 249, we discussed the principle of merger. The situation there centered about a contract followed by a deed. We repeated a well established rule that the contract is merged in the deed in the *absence of mistake* (Emphasis supplied). Here the trial court found that by mistake the real estate contract did not conform to the binder. We agree.

■■ Finally, the appellants assert that the court erred in finding and concluding that the charge of $58.23 per lot was a water assessment within the meaning of the binder agreement. The charge was made by the City of Albuquerque by virtue of its Policy 7 (d) in connection with Water Assessment Dist. No. 2. Policy 7 (d) was expressed as follows:

"The cost for water lines constructed as part of water assessment districts shall be assessed as follows: Properties developed at the time of extension shall pay their full proportionate share of the

costs for such extension. Undeveloped lots which do not take water from such water main extension shall be assessed one-half the amount assessed against the same amount of frontage of developed lots. The City shall pay the amount of the assessment not charged against undeveloped property; provided that when such property shall obtain service from the water main, the City shall collect a tap fee equal to one-half the assessment plus the normal fee charged for connections to water mains. (Adopted by City Commission May 23, 1961)."

At the time of the adoption of Policy 7 (d), Sections 14–40–9 and 14–39–2, N.M. S.A. 1953 (prior to the adoption of the present Municipal Code), were in effect and applicable. Under these sections the City was given authority to place assessments against the property benefited by water and sewer facilities in such manner as the City deemed equitable. The City of Albuquerque was acting in compliance with the prescribed statutory method. City of Clovis v. Crain, 68 N.M. 10, 357 P.2d 667. By the adoption of Policy 7 (d) the City deferred payment of the final assessment until such time as the facility was put into use and the ultimate benefit to the lot was exploited. See Morris v. Ehlers, 211 Md. 23, 124 A.2d 776, 59 A.L.R.2d 1035; Machen v. Yost, 54 App.D.C. 261, 296 F. 1008 (1924).

The appellants' contend that the charge to be collected under Policy 7 (d) was not an "assessment" but rather a fee for use of the utility. A careful reading of Policy 7 (d) does not support this argument. It will be noticed that the charge was based on front footage. This is not characteristic of a fee. Further, the amount charged is one-half the assessment plus the *normal fee* (Emphasis supplied) charged for connection to water mains. To adopt the appellants' theory we would say that contrary to the wording of Policy 7 (d) this is in reality a fee plus a fee. The name given the charge is not controlling. We are more concerned with the reason for the charge. See Altman v. Kilburn, 45 N.M. 453, 116 P.2d 812, 136 A.L.R. 554. An early case, Town of Macon v. Patty, 57 Miss. 378, 34 Am.Rep. 451, frequently referred to as a leading case on the subject, formed the following definition:

"An assessment is unlike a tax in that the proceeds must be expended in an improvement from which a benefit, clearly exceptive and plainly perceived, must enure to the property upon which it is imposed."

See also In re Walker River Irr. Dist., 44 Nev. 321, 195 P. 327, where this distinction was made:

"There is a wide difference in law between a tax and an assessment. In the one case the taxes are assessed against the individual and become a charge upon

his property generally. In the other, the assessment, being for benefits accruing to the specific property, becomes a charge only upon and against it, and liability for the charge is confined to the particular property benefited."

See further Cullinan v. Grey, 18 Cal.2d 247, 115 P.2d 460, " * * * an assessment is a charge made for the improvement of a certain piece of property * * *" Examination of the procedure employed in Water Assessment Dist. No. 2 indicates that the final charge became due when the water was brought to the individual lot benefited by the service. The trial court correctly found the charge to be an assessment. See Altman v. Kilburn, supra, and cases cited therein.

Finding no error, the judgment of the trial court is in all respects affirmed.

It is so ordered.

CHAVEZ, C. J., and COMPTON and CARMODY, JJ., concur.

MOISE, Justice (dissenting).

I find myself unable to agree with the opinion in this case.

There can be no question that when appellant sold and appellee purchased the lots in question, the binder provided for assumption by appellee of "water and sewer assessments at not more than $216.84 per lot." The printed portion of the binder stated that the sellers should furnish an abstract of title or title insurance "showing merchantable title clear of liens and assessments except as set out herein. * * *" The contract signed by the parties failed to mention the limit on the amount of water and sewer assessments to be assumed by the purchasers, but the omission was an error or oversight and the limitation as stated in the binder should be read into the contract. Appellant does not argue otherwise.

As I see it, the only issue present is one of interpretation of the agreement in the light of the facts and circumstances. See 59 A.L.R.2d 1044, 1047, quoted in the majority opinion.

To arrive at the meaning of the contract, it is necessary that we determine if the $58.23 "tap fee" charged by the City under its policy 7(d) was a "lien or assessment." That it was not seems clear to me. It had none of the attributes of a lien or assessment. For a definition of "assessment" see 48 Am.Jur. 565, Special or Local Assessments, § 3. In City of Roswell v. Bateman, 20 N.M. 77, 146 P. 950, L.R.A.1917D, 365 (1914), this court generally discussed the use of special assessments for the purpose of making local improvements. The "tap in" charge here at issue is to my mind more nearly like the "service charge" discussed by us in City of Clovis v. Crain, 68 N.M. 10, 357 P.2d 667, 88 A.L.R.2d 1243 (1960). For a case passing upon the nature

of a charge almost identical to that here being considered, see City of De Pere v. Public Service Commission, 266 Wis. 319, 63 N.W.2d 764 (1954). In that case the city water department, in addition to a $25.00 fee to tap the main, undertook after a certain date to charge $1.25 per running foot of real estate to be served, which amount was to be collected from anyone seeking to connect to a water main. The charge was provided for in an ordinance duly enacted by the city. In holding that the charge was not an assessment but a charge for service over which the public service commission had jurisdiction the court had the following to say:

"* * * An assessment differs from a general tax, however, in that it is imposed to pay for an improvement which benefits a specific property within the political divisions imposing it. For that reason an assessment is always made against the land in proportion as it enhances the value of that land, and it fixes a lien on the land. In the instant case, it was stipulated that the charge was not carried on the books of the city as a special assessment against specific property which abuts the main, the pay-ment for which is proposed to be re-couped. Neither is it shown in the record as a lien against the real estate."

The charge in the instant case clearly was not fixed as a lien on the property, nor was it shown in the records as a lien. See 10A Thompson on Real Property (1957 Replacement) § 5314. Neither was it carried on the books of the city as a special assessment against the lots.

The following additional cases are cited as helpful and instructive: Boardman-Smith Corp. v. Sherman, 176 Pa.Super. 302, 107 A.2d 202 (1954); Perkinpine v. Hogan, 47 Pa.Super. 22 (1911); Gilham v. Real Estate Title Ins. and Trust Co., 203 Pa. 24, 52 A. 85 (1902); District Title Ins. Co. v. United States, 83 U.S.App.D.C. 335, 169 F.2d 308 (1948).

Inasmuch as I am unconvinced that under the contract between the parties and the law cited above, the "tap fee" of $58.23 per lot was in any sense an assessment but, to the contrary, am convinced it was simply a charge for bringing water to a particular lot, similar to a meter charge or service charge, I respectfully dissent from the opinion which affirms the trial court. I would reverse.