CHAUNCEY BROOKS, and others *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Act of 1838, ch. 226, vesting certain powers in the Corporation of the City of Baltimore in relation to Streets, Constitutional—Distinction between Taxes and Special assessments for Benefits—Parties failing to Appeal under Ordinance No. 90, of 1876, of the City of Baltimore, not entitled to seek relief in Equity—Power of the City of Baltimore to Sell property upon failure of the Owner to pay for Benefits assessed thereon—Act of 1838, ch. 226, not Repealed by the Act of 1876, ch. 20.*

By the Act of 1838, ch. 226, (sec. 837, Art. 4, of the Code of Public Local Laws,) power is given to the Mayor and City Council of Baltimore to provide for laying out, opening, extending, widening, straightening or closing up in whole or in part, any street, square, lane or alley, within the bounds of said city, which in their opinion, the public welfare, or convenience may require; to provide for ascertaining whether any, and what amount, in value, of damage will be caused thereby, and what amount of benefit will thereby accrue to the owner or possessor of any ground or improvements *within or adjacent* to said city, for which such owner or possessor ought to be compensated, or ought to pay compensation, and to provide for *assessing and levying* either generally on the whole assessable property of said city, or *specially* on the property of the persons so benefited, the whole or any part of the amount of damages and expenses, which they shall ascertain will be incurred in locating, opening, &c. It also authorizes provision to be made by ordinance for an appeal from any such assessment. The Mayor and City Council of Baltimore, by Ordinance No. 90, of 1876, directed the Commissioners for Opening streets in that city, to extend and widen Eutaw street, and to extend Eutaw Place from Laurens street to North Avenue. The property of the appellants lies outside of the city limits, but adjacent to the improvements contemplated by this ordinance. Under the Act of 1838, ch. 226, the appellants were assessed for benefits accruing to them as owners of this property. On a bill to restrain the appellee from collecting these assessments, it was HELD:

1st. That the Legislature had the constitutional power to authorize benefits to be assessed and levied by the Mayor and City Council of Baltimore, upon property adjacent to, as well as within the limits of, the city.

2nd. That such assessment was not a tax for the the support of the municipal government, but a contribution from persons, whose property had been increased in value by the opening and widening of the street in question, at least in an amount equal to the sum they were required to pay.

Taxes and special assessments for benefits stand upon widely different grounds, and the distinction between them has been so generally recognized, that it must now be considered as settled.

The Mayor and City Council of Baltimore having provided by their Ordinance No. 90, of 1876, for an appeal to the Baltimore City Court from any assessment of damages or benefits by the Commissioners, parties who felt themselves aggrieved by the benefits assessed to them, and failed to exercise the right of appeal thus provided for them, and in which they would have had the benefit of a jury trial, cannot come into equity for relief.

Under the Act of 1838, ch. 226, authorizing benefits to be assessed and levied by the Mayor and City Council of Baltimore, upon property adjacent to, as well as within, the city, the Mayor and City Council have the power to provide by ordinance for the sale of such property, upon the failure of the owner thereof to pay the assessment.

The Act of 1838, ch. 226, under which Ordinance No. 90, of 1876, was passed, was not repealed by the Act of 1876, ch. 20, which had no application to the improvements contemplated by that ordinance.

APPEAL from the Circuit Court of Baltimore City.

This case was submitted on bill and answer in the Court below, and by agreement of counsel a decree *pro forma* was passed, refusing the injunction prayed for by the complainants and dismissing their bill. From this decree the complainants appealed.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, ALVEY and ROBINSON, J.

*William F. Frick,* for the appellants.

*John V. L. Findlay* and *James A. Buchanan*, for the appellee.

BRENT, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore by *Ordinance No.* 90, approved May 23rd, 1876, directed the Commissioners for opening streets in that city to extend and widen Eutaw street, and to extend Eutaw Place from Laurens street to North avenue—the latter being the boundary in that direction of the city limits. The property of the appellants lies outside of the city limits, but *adjacent* to the improvements contemplated by this ordinance. Under the *Act of* 1838, codified in *Art.* 4, *sec.* 837, in relation to the City of Baltimore, *Code of Public Local Laws*, they have been assessed for benefits accruing to them as owners of this property, and the object of this bill is to prevent by injunction the appellee from proceeding to collect such assessment.

The Act of 1838, provides that, "the Mayor and City Council of Baltimore shall have full power to provide for laying out, opening, extending, widening, straightening or closing up in whole or in part any street, square, lane or alley, within the bounds of said city, which in their opinion the public welfare or convenience may require; to provide for ascertaining whether any, and what amount in value of damage will be caused thereby, and what amount of benefit will thereby accrue to the owner or possessor of any ground or improvements *within or adjacent to said* city, for which such owner or possessor ought to be compensated, or ought to pay a compensation, and to provide for *assessing and levying*, either generally on the whole assessable property of said city, or specially on the property of the persons benefited, the whole or any part of the amount of damages and expenses, which they shall ascertain will be incurred in locating, opening, &c." It also authorizes provision to be made by ordinance for an appeal from any such assessment.

The constitutionality of this law in assessing benefits to particular owners of property has been heretofore called in question, but it was fully sustained by this Court in the case of *Alexander & Wilson vs. The Mayor and C. C. of Baltimore,* 5 *Gill,* 383, decided in 1847. In that case however, the property upon which the benefits were assessed, laid within the city limits.—Such has been the growth of the city, that its improvements have now reached in many places the very verge of its boundary line, and for the first time the power of the Legislature to authorize benefits to be assessed and levied upon property *adjacent* is directly presented.

We have failed to find any constitutional prohibition upon the exercise of this power by the Legislature. Was it a tax, which had been imposed, to be contributed for the support of the municipal government, it would be otherwise. And it is in this respect that there is error in the argument urged on the part of the appellants They have treated this as a tax strictly speaking, and not as a contribution from persons whose property has been increased in value, by the opening and widening of the street in question, at least in an amount equal to the sum they are required to pay. The case in *Wells vs. Weston,* 22 *Missouri,* 384, which has been very strongly relied upon, is that of a *tax* "on all real estate outside of and adjacent to the corporation, to the distance of half a mile," imposed for the support of the city government, and is in no sense an assessment for benefits. So also is the case in 15 *Wallace,* 300, one of a tax—the question there being the power to tax bonds in the hands of foreign holders.

Taxes and special assessments for benefits stand upon widely different grounds, and the distinction between them has been so generally recognized that it must now be considered as settled. Judge COOLEY in his work on "Taxation," has considered this branch very elaborately. He says on page 416, "The general levy of taxes is under-

stood to exact contributions in return for the general bene-
fits of the government, and it promises nothing to the
persons taxed, beyond what may be anticipated from an
administration of the laws for individual protection, and
the general public good.    Special assessments on the other
hand, are made upon the assumption that a portion of the
community is to be specially and peculiarly benefited in
the enhancement of the value of property, peculiarly
situated as regards a contemplated expenditure of public
funds ; and in addition to the general levy they demand
that special contributions in consideration of the special
benefit, shall be made by persons receiving it.    The justice
of demanding the special contribution is supposed to be
evident in the fact that the persons who are to make it,
while they are made to bear the cost of a public work, are
at the same time to suffer no pecuniary loss thereby ; their
property being increased in value by the expenditure to an
amount at least equal to the sum they are required to pay.
This is the idea that underlies all these levies.'' We also
refer to *note* 1, on page 417, where a large number of authori-
ties are cited, all sustaining this distinction, and resting
the right to assess for benefits, upon the ground of a cor-
responding enhancement in the value of the property
caused by the local improvement.

This therefore is not a tax, in the constitutional sense
in which the word tax is used in that instrument.    It rests
entirely upon the ground of equal benefits received, and
as it is a legitimate exercise of the power of the Legisla-
ture to authorize its assessment, 5 *Gill*, 383, it follows as
a logical conclusion that it can make no difference whether
the property lies upon one or the other side of a municipal
line—provided the reason for the exercise of the power is
applicable.

It is said that the benefits assessed to these appellants
are too large.    That question cannot be raised in this pro-
ceeding.    The parties, if they felt aggrieved by the amount

assessed to them, had an ample remedy at law. The Act of the Legislature, above referred to, directs the Mayor and City Council to provide by their ordinance for an appeal from any allowance by the Commissioners of damages or any ascertainment of benefits. This they have done, in this particular case, by Ordinance No. 90 of 1876, the second section of which provides for an appeal to the Baltimore City Court from any assessment of damages or benefits by the Commissioners. If the appellants have failed to exercise this right, they cannot therefore come into equity and ask relief. They should have sought it by an appeal which was open to them, and in which they would have had the benefit of a jury trial.

Having determined that it was a legitimate exercise of power by the Legislature to pass the Act of 1838, authorizing the Mayor and City Council to assess benefits to the owners of property *adjacent* to, as well as within, the City, the question arises, are the Mayor and City Council further empowered to provide by ordinance for the sale of such property upon the failure of the owner to pay the assessment. The language of the Act is, "and to provide for *assessing and levying*, either generally on the whole assessable property of said city, or specially on the property of persons benefited, the whole or any part of the damages and expenses which they shall ascertain will be incurred in locating, &c." The grant of the power to *assess and levy* we think carries with it the authority to pass the ordinance in question. Had the Act stopped after conferring the power to assess, it might then with propriety be argued, that the corporation would have to resort to its action at law to recover a judgment, but having conferred the additional power to *levy*, it is clearly intended thereby not only to create a lien upon the property, but to give the right *to raise out of it* the amount for which it is liable. The eighth section of their charter, (1796, ch. 68,) gives "full power and authority to the corporation to pass all

ordinances necessary to give effect and operation to all the powers vested in them." Surely this is sufficient authority to pass an ordinance directing the mode and manner of selling property, out of which they have been clothed with the power to realize an amount due. But in addition to this, a subsequent part of this section of the Act of 1838, shows that the power to pass the ordinance to sell, has been clearly conferred by that Act. After directing that the assessments for benefits shall go for the payment of damages and expenses incurred, it authorizes the Mayor and City Council "to provide for *collecting* and paying over the amount of compensation adjudged to each person entitled." Certainly the amounts thus to be paid, are of the damages and expenses incurred, and for the collection of these the Mayor and City Council are required to provide. This they could only do, as they have done, by ordinance.

In our opinion, therefore, it is within the powers conferred upon the Mayor and City Council that the several sections relating to the sale of property for unpaid assessments, *Baltimore City Code,* 1869, *pages* 835, 6 and 7— were adopted by them as parts of their ordinances, and they are applicable wherever the right to assess and levy for benefits exist.

But it is contended that the Ordinance *No.* 90 *of* 1876, under which these improvements of Eutaw street have been undertaken is void, because the *Act of* 1838, under which it is passed has been repealed, in so far as improvements are contemplated by that ordinance, by the *Act of* 1876, *ch.* 20.

It appears that Eutaw street is to be so widened and extended, from Laurens street to North Avenue, as to allow carriage ways of twenty-eight feet width on either side, with a succession of grass plots or squares in the centre, "in the same manner as the same is improved already between Laurens and Dolphin streets."

A very short reference to the Act of 1876 will show that it has no application to improvements as here contemplated. That law was passed to enable the Mayor and City Council to purchase, lease or condemn lands within the city for public parks and squares. It evidently contemplates such parks and squares as are ordinarily understood by the common acceptation of those terms—places to be used as a resort for the recreation, health and convenience of the public. To our minds the improvements upon Eutaw street are not embraced by this Act. They are local improvements not intended as places of resort for the general public, but designed simply to beautify and ornament that particular section of the city. The law of 1876 is not applicable, and we think upon the whole the appellants have shown no sufficient ground for the relief asked for in their bill. The decree below refusing an injunction and dismissing the bill will be affirmed.

*Decree affirmed.*