## THE SOMERSET COUNTY SANITARY COMMISSION, acting for and on behalf of Somerset County Sanitary District, Inc. *v.* CHAMBERLIN

[No. 366, September Term, 1968.]

*Decided July 9, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, MCWILLIAMS, FINAN, SINGLEY and SMITH, JJ.

*Alexander G. Jones* for appellant.

*Thomas S. Simpkins* for appellee.

SMITH, J., delivered the opinion of the Court.

Appellee (Chamberlin) successfully challenged in the Circuit Court for Somerset County the propriety of a front foot assessment levied on his property for the maintenance of sewerage facilities by appellant (Sanitary Commission). We shall reverse that action.

The Sanitary Commission exists pursuant to the provisions of Code (1965 Repl. Vol.) Art. 43, § 645 *et seq.* The agreed statement of facts filed in this Court indicates that the Sanitary Commission in 1962 constructed certain sewerage facilities in an area known as Princess Anne Subdistrict in Somerset County. In 1963 and annually thereafter it levied front foot assessments against the properties within its jurisdiction to repay the bond issue which financed the improvement. The situation here can perhaps best be understood by reference to a sketch

appended to this opinion which the reporter is directed to reproduce. A sewer was constructed on Hampden Avenue in Princess Anne. Chamberlin owns land situated on the east side of Somerset Avenue or Main Street in Princess Anne. He does not own land on Hampden Avenue. There is no sewer on Somerset Avenue. The railroad is located to the east of the Chamberlin land. The lot of Morris E. Layfield at the southeast corner of Somerset Avenue and Hampden Avenue separates the Chamberlin land from the sewer. Chamberlin has an easement across the Layfield land to the Hampden Avenue sewer.

Chamberlin formerly owned land having a total frontage on Somerset Avenue of 306 feet. He conveyed to Chamberlin Insurance Agency, Inc., on December 2, 1964, a lot from the center of his land having a frontage on Somerset Avenue of 80 feet and running back in parallel lines to the railroad. This left him with two lots on Somerset Avenue, one with a frontage of 85 feet and one with a frontage of 141 feet. The only land served by the sewer (there being no improvements on the remaining lot or the lot conveyed to Chamberlin Insurance Agency, Inc.) is the 85 foot lot. The northernmost line of the Chamberlin land (the line most nearly parallel to Hampden Avenue) is 190.25 feet in length.

The Chamberlin land was assessed by the Sanitary Commission for a frontage of 190.25 feet. Chamberlin paid the assessment for 1963, 1964 and 1965. He objected to payment for the years 1966, 1967 and 1968, contending that his assessments should be based upon his frontage of 85 feet on Somerset Avenue rather than the 190.25 feet of frontage on his north line as projected to Hampden Avenue.

The assessment was made pursuant to the provisions of Section 657 [1] of Art. 43 which provides in pertinent part:

---

1. Although there were amendments to this section by Chapters 139, 552 and 163 of the Acts of 1966, 1967 and 1968, respectively, these amendments in no way changed the text of the portions of Section 657 herein quoted, although the 1966 amendments did divide the section into subsections.

"(a) *Annual charge and assessment.* — For the purpose of paying the interest and principal of the bonds issued in the name of a district * * * the said commission is hereby empowered * * * to fix an annual assessment, payable to such district on all properties, improved or unimproved, binding upon a street * * * in which a water main or sewer has been built. The said annual assessment shall be made upon the front-foot basis * * *. The said commission for the purpose of assessing benefits shall divide all properties binding upon a street * * * in which a water pipe or sanitary sewer is to be laid, into four classes, namely: Agricultural, small acreage, industrial or business, and subdivision property, and the commission may subdivide each of said classes in such manner as it may deem to be in the public interest.

 * * *

"(c) *Classification of property; criteria for assessments.* * * * Said benefits shall be levied for both water supply and sewerage construction and shall be based for each class of property upon the number of front feet abutting upon the street * * * in which the water pipe or sewer is placed; provided, however, that in the case of any irregular shaped lot abutting upon a road * * * in which there is or is being constructed a * * * sewer at any point, said lot shall be assessed for such frontage as the commission may determine to be reasonable and fair; and provided further that no lot in a subdivision property shall be assessed on more than one side, unless said lot abuts upon two parallel streets, that corner lots may be averaged and assessed upon such frontage as the commission may deem reasonable and fair, and that all lots in this class shall be assessed even though a * * * sewer may not extend along the full

length of any boundary * * *. Front-foot benefit charges for * * * sewerage construction shall be as nearly uniform as is reasonable and practical for each class or subclass of property throughout each sanitary district for any one year * * *.

"(d) *Connection with nonabutting property permitted; charges.*—The commission shall at any time permit a connection with a * * * sewer by the property owner whose property does not abut on said * * * sewer and who has not previously thereto paid a benefit charge for the construction of said * * * sewer, provided, said commission shall classify said property and determine a front-foot charge to be paid by said property owner as though his or her property abutted upon said * * * sewer; and in the event of such connection being made, said property owner and said property as to all charges, rates and benefits shall stand in every respect in the same position as if the said property abutted upon a * * * sewer."

The Sanitary Commission filed a bill of complaint in the Circuit Court for Somerset County to enforce the lien. The chancellor said in part in ruling against the Sanitary Commission:

"The narrow question to be resolved is whether the Commission had the authority under this section to project the northerly boundary of the Respondent's property to Hampden Avenue and use that distance in making a proper assessment or whether the Commission is required to use the footage that fronts on Somerset Avenue as its assessment. It is my opinion that the Complainant has erred in making this front foot assessment. I do not think that it is within its power to project the northern boundary as it has done to Hampden Avenue in arriving at its

assessment on the Respondent's property. If this were done then the Respondent would be paying a greater assessment than his immediate neighbor who has a greater frontage on Hampden Avenue than the 190.25 feet which is Mr. Chamberlin's northern boundary. The Layfield lot as shown by the plat is on a corner and this assessment is figured by adding the frontage on Hampden Avenue and the frontage on Somerset Avenue and dividing it in half.

"While the language of the statute is not clear and I have been presented with no cases which would help me in making this decision I think that the Complainant is required to assess the Respondent's lot by the number of feet that he fronts on Somerset Avenue. I am aware that other properties having somewhat similar problems have been treated in the same way as the Respondent's property was assessed. I am also aware that it is well established that the determination by municipal authorities will not be disturbed and the Courts shall not substitute its judgment unless they have acted in an illegal, arbitrary and capricious manner. As I have said in a previous case in which the Commission was concerned, that I am sure that the Commission in making this assessment of this property and all similar property owners was acting in good faith in exercising its best judgment, however, in my opinion, the section of the law which authorizes it to assess property for the purpose of installing, maintaining and operating a sewage disposal system does not extend to it the right to make such an assessment which the Respondent has objected to. It is my opinion that the Respondent owes on the assessment of 85 feet, that which fronts on Somerset Avenue and not on the 190.25 feet which is the northern boundary of his lot."

The principles here involved were fully considered by this Court in *Leonardo v. County Comm.*, 214 Md. 287, 134 A. 2d 284 (1957), *cert. den.* 355 U. S. 906, 78 S. Ct. 332, 2 L.Ed. 2d 260 (1957), *reh. den.* 355 U. S. 967, 78 S. Ct. 534, 2 L.Ed. 2d 543 (1958). Among other things, the Court there had under consideration the propriety of a "benefit charge" or "erosion tax" where a special taxing district was composed of two sets of lots with one assessment on the "front section" and another assessment on the "rear section". Judge (later Chief Judge) Prescott said for the Court at page 307:

> "The argument, in effect, is that the levy of a special or local assessment must be based upon the value of the land from which the assessment is exacted. However, it loses sight of the fundamental theory of the basis for special or local assessments for benefits. They stand upon widely different grounds from general taxes. *Brooks v. Baltimore*, 48 Md. 265, 268. Special assessments are in the nature of a tax upon property levied according to *benefits* conferred on the property. The whole theory of a special assessment is based on the doctrine that the property against which it is levied derives some special benefit from the improvement. The justice of demanding the special contribution is supposed to be evident in the fact that the persons who are to make it, while they are made to bear the cost of a public work, are at the same time to suffer no substantial pecuniary loss thereby; their property being increased in value by the expenditure to an amount substantially equal to the sum they are required to pay. 14 *McQuillen, Municipal Corporations*, secs. 38.01, 38.31, (3rd Ed.). This Court has recognized the validity of such assessments on many occasions. The mode of assessment is a legislative question, subject to constitutional limitations. The mode

may be committed to municipal authorities and *the general rule is that the exercise of their discretion therein, if made according to a definite and just plan, will not be reviewed by the courts where neither fraud nor mistake appears. Mc-Quillen, op. cit.,* sec. 38.111. In some jurisdictions *ad valorem* assessments have been upheld, but they are certainly not required. *Dinneen v. Rider* [152 Md. 343, 136 A. 754 (1927)]." (emphasis added)

In *Dinneen,* to which reference was made by Chief Judge Prescott, the Court had under consideration a front foot assessment by the Metropolitan District of Baltimore County. Judge Parke said for the Court:

"The justification for such a special assessment is the benefit to the property upon which the assessment is laid, and it is presumed that the Legislature considered the purposes for which it authorized the assessment not only a public one, but also one which would be of special benefit to the property upon which the assessment is to be laid in proportion to its frontage. As this special benefit is particular to every property abutting on the improvement, it thereby becomes also general in its extent by reason of the universality of its operation upon all the properties in the area [a]ffected. Because of this double aspect, the common benefit may be measured by the standard of the number of feet fronting upon the improvement, and so the weight of authority and of reason supports the rule as stated by this Court in *Bassett v. Ocean City,* 118 Md. 114, where it was said: 'According to the rule established by these recent decisions, the Legislature may apportion the cost of improvement of a street or avenue among the owners of the abutting property according to the front foot rule, and this rule is in accord with the decisions

in this state prior to the case of *Ulman v. Baltimore,* [72 Md. 587, 21 A. 711 (1890)], which, as applied to an apportionment by the Legislature, have not been overruled. In the case of *Baltimore v. Johns Hopkins Hospital,* [56 Md. 1 (1881)], Judge Miller said: "It is conceded, on all sides, to be the province of the Legislature to prescribe, in such cases, how the apportionment shall be made, and this may be either by the front foot, by the area of the fronting lots, or by their value, including or excluding the buildings upon them. Occasional hardships may result from the adoption of either mode, but the authorities are united in the conclusion that either may lawfully be made the basis of apportionment. " ' At p. 123." *Id.* at 361-62.

We concede the possibility of a hardship as referred to in the *Dinneen* quote from *Baltimore v. Johns Hopkins Hospital,* but the assessment here appears to be one "made according to a definite and just plan". It would appear that the Sanitary Commission had three possible methods open to it, assessment as though the land fronted on Hampden Avenue, assessment as though the land fronted on Somerset Avenue, or assessment as though it were a corner lot projected to the intersection of Hampden and Somerset Avenues. Under the statute had the land been assessed as a corner lot it would have been "averaged and assessed upon such frontage as the commission [might] deem reasonable and fair". The chancellor found that the method used on corner lots was to add together the frontage on the two streets and then divide it in half. By that formula had this land been assessed as a corner lot prior to the conveyance to Chamberlin Insurance Agency, Inc., it would have had a front foot assessment of 248.125 feet. If it had been assessed on its frontage on Somerset Avenue prior to the conveyance, the front foot assessment would have been 306 feet. The front foot assessment applied was 190.25 feet, the

extension to Hampden Avenue. This was the lowest of the three possible methods. No complaint was then made.

As indicated by Chief Judge Prescott in. *Leonardo, supra,* the assessment was made according to a definite and just plan. Neither fraud nor mistake appears. There is no contention of lack of uniformity and the chancellor, a resident of Princess Anne, said, "I am aware that other properties having somewhat similar problems have been treated in the same way as the Respondent's property was assessed." The selection of the formula for assessment of a nonabutting lot was within the sound discretion of the administrative body and there appears to have been no abuse of that discretion. Accordingly, the decree must be reversed.

> *Decree reversed and case remanded for passage of a decree in conformity with this opinion; appellee to pay the costs.*

HAMPDEN AVE

228.33'

MORRIS E. LAYFIELD

143.40'

190.25'

85'

ROBERT L. CHAMBERLIN JR.

180'±

80'

CHAMBERLIN INSURANCE AGENCY, INC.

150'

141'

ROBERT L. CHAMBERLIN JR

119.6'

181.6'

N.A. HOWARD JR

SOMERSET AVE. (MAIN STREET)

PENNSYLVANIA RAILROAD

N