## MILESTONE, ET AL. *v.* WASHINGTON SUBURBAN SANITARY COMMISSION

[No. 104, September Term, 1969.]

*Decided December 29, 1969.*

*Motion for rehearing filed January 28, 1970; denied February 2, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, FINAN, SINGLEY and SMITH, JJ.

*R. Edwin Brown* for appellants.

*Paul T. Sisson,* with whom were *John B. Kenkel* and *Charles M. Byrd* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court. BARNES, J., dissents. Dissenting opinion at page 258 *infra.*

This litigation is produced by what the appellants, David Milestone et al., believed to be an attempt on the part of the appellee, Washington Suburban Sanitary Commission (the Commission), to assess a parcel of land twice for the same sewer. The trial judge (Meloy, J.) was convinced there had not been a prior assessment. We shall sustain the action of Judge Meloy.

The reporter is directed to reproduce the attached plat. It is a copy of a portion of the plat filed in this case and printed in the record extract. The situation here can best be understood by reference to that plat.

In the spring of 1962 David Milestone (Milestone) owned a tract of land on the Laurel-Bowie road in Prince George's County said to comprise 21.4064 acres. The frontage of Milestone on this road was broken by two parcels previously conveyed by someone to Messrs. Hanauer and Poole which, for purposes of the Commission, have been called "Block 257/10" and "Block 258/10", respectively.[1] A sewer main was constructed by the Commission in 1961. This line ended at block 257. It apparently reached the edge of the remaining frontage of Milestone on this road, that area being known for Commission purposes as block 256, but was not constructed in front of it. Water lines along the entire Milestone frontage on this road were installed at the same time the sewer lines were installed for a portion of the frontage. The Commission, for purposes of making its assessments, as-

---

1. The number "10" appears in all of the block references, apparently referring to the fact that the land is situate in the 10th Election District of Prince George's County. For the sake of simplicity the blocks will be from time to time referred to without including the number "10".

signed block numbers. Although the land of Milestone was a single tract of 21.4064 acres, the Commission assigned four different block numbers to this land, 188, 256, 259 and 260.[2]

In March of 1962 Milestone was notified of a sewer benefit charge assessment for block 259 pertaining to a frontage of 330 feet on the Laurel-Bowie road, precisely the number of feet appearing on the plat attached to this opinion for that block. The notice at one place had on it:

"Lot 3.534 ac., 1 ac. & 14 ac. Block 259/10 Subdivision Bowie Road near B. & O.RR — 10th Dist."

Below the assessment data the following appeared:

"Parcels 188/10, 256/10, 259/10 & 260/10 continuous frontage"

On the same day Milestone was notified of an assessment for sewer purposes pertaining to block 260 for 69 feet, the precise frontage specified on the attached drawing. This notice had above the data relative to the front foot benefit charge:

"Lot 2.8405 acres Block 260/10 Subdivision South Laurel 10th Dist."

At the foot the notice said:

"Parcels 188/10, 256/10, 259/10 & 260/10 continuous frontage"

Notices of water assessments for blocks 259 and 260 were issued on the same day as the sewer assessment notices with the same data appearing on the notices. On the same date a notice of assessment was issued relative to block 256 for water purposes. This assessment was originally for 376 feet, but the assessment notice has on it a notation stating:

"376′ corrected to 380′ effective 1-1-62"

2. For a similar method of assessment see *Morris v. Ehlers*, 211 Md. 23, 25, 124 A. 2d 776 (1956).

in longhand with the signature of William A. Ryon (Supervisor of Assessments) written on it. Reference to the attached plat will reveal that the frontage of block 256 as it there appears is 379.77 feet (283 feet plus 96.77 feet). The course down the road is S 07° 24′ 00″ W 379.77 feet. This notice had on it above the front foot benefit charge assessment the legend:

"Lot 3.534 ac., 1 ac. & 14 acres Block 256/10 Subdivision Bowie Rd. near B. & O RR—10th Dist."

Below that it said:

"Parcels 188/10, 256/10, 259/10 & 260/10 continuous frontage"

On March 16, 1962, Milestone wrote the Commission enclosing "photostatic copies of 5 notices of water main benefit charges and sewer benefit charges" and requested "the redemption figure necessary to pay off these front foot benefit charges in full." On April 4, 1962, the Supervisor of Assessments of the Commission wrote Milestone as follows:

"Reference is made to your letter of March 16, 1962 in which you enclosed photo-copies of five benefit charge notices, mailed you under date of March 8, 1962, on certain properties in the 10th (Laurel) Election District, Prince George's County, Maryland.

"You are advised that the amount necessary to redeem, or pay off in one lump sum, the water and sewer benefit charges indicated on the five notices, are as follows:

| | |
|---|---|
| Amount to redeem water benefit charge levied on 3.534 Ac., 1 Ac. & 14 Ac. (Parcel 256/10) | $2,481.71 |
| Amount to redeem water benefit charge levied on 3.534 Ac., 1 Ac. & 14 Ac. (Parcel 259/10) | $2,155.17 |

Amount to redeem sewer benefit charge levied on 3.534 Ac., 1 Ac. & 14 Ac. (Parcel 259/10)                    $2,753.83

Amount to redeem water benefit charge levied on 2.8405 Acres (Parcel 260/10)                    $ 809.82

Amount to redeem sewer benefit charge levied on 2.8405 Acres (Parcel 260/10)                    $ 575.80

"We trust this furnishes you with the information requested."

The above listed charges totaled $8,776.33. It will be noted that no reference is made in that letter to block 188. On June 5, 1962, Milestone paid the Commission the sum of $12,873.85, of which $4,097.52 was for assessments for block 188. The receipt stated it was:

"For: Redeeming effective Jan. 1, 1962, water & sewer front foot benefit charges levied against 21.3705 acres of land (Parcels 188/10, 256/10, 259/10 & 260/10), in the 10th (Laurel) Election District, Prince George's County, assessed to David Milestone."

The plat filed in the record extract and a portion of which is here reproduced was prepared subsequent to the 1962 assessment. It was approved by the National Capital Park and Planning Commission on June 20, 1962.

On September 21, 1965, 6.7 acres of the land owned by Milestone was conveyed so that Philip Milestone now has an interest in it. That land is shown as block 256 B on the plat. In 1967 this 6.7 acre parcel was improved by the erection of buildings containing 161 apartment units. The apartments were connected to the existing sewer in Laurel-Bowie road by a line running through other land of Milestone (block 259). In March of 1968 a sewer benefit charge notice was sent to Milestone as a result of this construction and connection. The annual charge

was in the amount of $1,999.62 on the unit basis of 161 units at 18 feet each or a total of 2,898 feet. The property was identified in the notice as:

> "6.70 Ac. at Center Lot Pt. of Block 256B/10 Subdivision Milestone Apartments — 10th District Parcel A"

There are two statutes here pertinent. Section 1571 a [3] of the 1953 Code of Public Local Laws of Prince George's County at the time of the 1962 assessment provided in pertinent part:

> "(a) * * * [W]ithin twelve months after the completion of a * * * sewerage project the Commission is empowered and directed to fix and levy a benefit charge upon all property abutting upon said * * * sewer, in accordance with the classification * * *. Said benefit shall be levied for * * * sewerage construction and shall be based for each class of property upon the approximate cost of said construction as an integral part of the whole system, and the number of front feet abutting upon the street, * * * in which the * * * sewer is placed.
>  * * *
> "(d) In classifying property and levying said front foot benefit charge, * * * any irregular shaped lot having only one frontage may be assessed for such frontage as the Commission may determine to be reasonable and fair * * *."

At the time of the 1962 assessment the only classes for assessment purposes were "agricultural, small acreage, industrial or business and sub-division property." By a 1963 amendment the "agricultural, small acreage [and] industrial or business" classifications were retained, and there were added as classifications "sub-division residen-

---

3. Section 1571 as amended is known as § 83-71 in the current Prince George's Code.

tial, multi-unit residential, multi-unit business and institutional". Moreover, the provision relative to assessment was amended so that it read:

> "Said benefit charge shall be levied for * * * sewerage construction and shall be based for each class of property upon the approximate cost of said construction as an integral part of the whole system, and either the number of front feet abutting upon the street, * * * in which the * * * sewer is placed, or *with respect to multi-unit classes, the number of units in or on the property abutting said * * * sewer line.*" (emphasis added)

It was pursuant to this latter amendment that the assessment here contested was made on the multi-unit residential basis.

Section 1571 (g)[4] of the 1953 Code of Public Local Laws of Prince George's County at the time of the 1962 assessment and also at the time of the 1967 connection provided in pertinent part:

> "The commission shall at any time permit a connection with a * * * sewer by a property owner whose property does not abut on said * * * sewer and who has not previously thereto paid a benefit charge for the construction of said * * * sewer provided said commission shall classify said property and determine a front foot charge to be paid by said property owner as though his property abutted upon said * * * sewer; and in the event of such connection being made said property owner and said property, as to all charges, rates and benefits shall stand in every respect in the same position as if the said property abutted upon a * * * sewer."

---

4. Now § 83-71 (g).

Milestone says:

"As evidence of the proposition that the sewer has been redeemed, the Court's attention is invited to the two sewer benefit charge notices [as to blocks 259 and 260] * * * [which] were exhibits before the lower Court. It is clear that the notices refer to the sewer in question. It should be noted that the notices contain acreage references in the following amounts: 2.8405, 3.534, 1.0, and 14.0. Simple addition results in a total land area of 21 + Acres, the same number of acres owned by the appellant. The appellee, by its Supervisor of Assessments, in a letter to the appellant dated April 4, 1962, [printed in full above] * * * stated that the amount necessary to redeem sewer benefit charges levied on a total of 21 + Acres was a certain amount. A cashier's receipt was given to the appellant, dated June 6, 1962 [printed in full above] * * *. It also refers to the total land in question and to the same sewer.

"Thus it is clear that the sewer, which was constructed in 1961 along the Laurel-Bowie Road, has been redeemed. Having been paid for and redeemed once, the Commission can not require the same sewer improvement to be redeemed and paid for a second time. This proposition is so elementary that appellant has been unable to find any cases wherein the question has been litigated."

Milestone's reference to the sewer's having been "redeemed" is not absolutely accurate. The pertinent statute (§ 83-71 (f)) provides for extinguishing or redeeming the benefit charge, not redeeming the sewer. It also states:

"The extinguishment or redemption of any benefit charge shall be conditional until the last

year of maturity of the bonds from the proceeds of which the construction was done, and if following redemption or extinguishment the use of the property changes to another class so that the property would be placed in a different class yielding a greater annual benefit charge than that utilized for computing the redemption amount, the commission may reclassify the property and re-impose a benefit charge for the remaining number of years, calculating the benefit charge, however, so as to give credit for the sum paid for extinguishment or redemption."

The acreage references on which Milestone bases his argument were for purposes of identification of the entire tract, not for the purpose of stating for what the assessment was being made. The only reference in those various notices as to the actual property being assessed is the front footage assessment which corresponds precisely with the blocks as laid down on the plat.

It will be noted that the letter of the supervisor of assessments to which reference is made carefully spells out that water benefit charges are levied for each of the blocks comprising the Milestone land while sewer benefit charges were levied only for blocks 259 and 260. No reference is made in the letter to block 188, also a part of the tract, as that block apparently was not included in the letter written by Milestone requesting the redemption figure as to his land. Milestone's letter refers to five notices. The reply listed the five assessments which we earlier summarized.

The cashier's receipt does refer to "water and sewer front foot benefit charges levied against 21.3705 acres of land". It does not say, however, that sewer charges were levied against all of the 21.3705 acres. Accordingly, the receipt is ambiguous and must be read with the Commission's letter of April 4 and the notices furnished.

In *Sanitary Commission v. Noel*, 155 Md. 427, 142 A. 634 (1928), our predecessors had before them a situation

in which the Commission increased the front foot benefit charges upon all properties of various classes for the purpose of defraying the cost of reinforcement and augmentation of the systems, required by unanticipated growth and spread of population within the district. Chief Judge Bond said for the Court:

> "Taking the classification then to be a proper basis for assessment of front foot benefit charges, it is argued that the levy of the increase on the complainant's property is still unconstitutional because the amount of benefits had been fixed for that property and partly paid, and because the increased outlay to be met by the commission was based on no change in construction in front of the property, and no change in supply to it, and that for these reasons the additional cost, must, following the benefits from it, be met by assessing other properties actually benefited, by increasing the general *ad valorem* tax throughout the district, or by general county taxes. We do not see any principle upon which the additional front foot assessment on this property could be held unconstitutional merely because there had already been an assessment levied on it. So long as the constitutional limits are not exceeded on the whole, there seems to be no illegality in making a total permissible charge in more than one assessment. Supplemental assessments are common and have generally been upheld. 1 *Page & Jones, Taxation by Assessment,* sec. 954; *Kadow v. Paul,* 274 U. S. 175." *Id.* at 434-35.

In *Leonardo v. County Comm.*, 214 Md. 287, 134 A. 2d 284 (1957), *cert. den.*, 355 U. S. 906, 78 S. Ct. 332, 2 L.Ed.2d 260 (1957), *reh. den.* 355 U. S. 967, 78 S. Ct. 534, 2 L.Ed.2d 543 (1958), Judge (later Chief Judge) Prescott said for the Court with reference to benefit charges:

> "The mode of assessment is a legislative question, subject to constitutional limitations. The mode may be committed to municipal authorities and the general rule is that the exercise of their discretion therein, if made according to a definite and just plan, will not be reviewed by the courts where neither fraud nor mistake appears. [14] McQuillen, [*Municipal Corporations*], § 38.111 [(3rd Ed.)]." *Id.* at 307.

Cf. *Somerset County Sanit v. Chamberlin*, 254 Md. 630, 255 A. 2d 290 (1969).

There is no allegation of fraud here. The question here basically resolves itself into one of fact. Pursuant to the grant of authority to it the Commission was permitted in the case of an irregularly shaped lot "having only *one* frontage" to assess as it might determine to be reasonable. The complete section makes it obvious that in speaking of "one frontage" reference is to frontage on only one street. In determining what was "fair and reasonable", we believe the Commission on the peculiar facts here existing was justified in treating the Milestone tract as more than one lot. It is quite obvious that the actual assessment made by the Commission with reference to the Milestone land was only for the frontage which actually abutted on the sewer.

Had the Commission in 1962 made a sewer benefit charge assessment against Milestone for the front footage of block 256 on the Laurel-Bowie road on the theory that the sewer by coming to the edge of block 256 (see plat) was available for the entire block, and had Milestone then proceeded to redeem or extinguish the benefit charge thus assessed, then we would agree that the Commission would now be foreclosed from levying a benefit charge on the basis then used. We are not obliged for the purpose of this decision to pass upon whether the Commission having levied on one basis would now be permitted to levy for a classification not in existence at the time of the original assessment. If blocks 257 and

258 had run through to the railroad (see plat) with Milestone's road frontage being identical with what he then owned, Milestone's 1962 assessment would have been the same as what he in fact paid in 1962. In that situation favorable consideration would not be given to a Milestone contention that he should not now pay an assessment for block 256 because he owned other land on the road (blocks 259, 260 and 188) for which he had previously been assessed. We see no difference between that and this case.

The dissenting opinion makes reference to the fact that the plat was filed subsequent to the assessments and that it was for *one* parcel. The significance of the plat is that mathematically the front foot assessments for each block are in accordance with the road frontage as shown on the plat, a fact even Milestone did not dispute below. It is common knowledge that assessing authorities maintain assessment plats compiled from deed descriptions. See for instance Code (1969 Repl. Vol.) Art. 81, § 45.

In the case of *Morris v. Ehlers*, 211 Md. 23, 124 A. 2d 776 (1956), to which reference was made in footnote 2, the tract of land comprised something in excess of 32 acres. The property was broken up into parcels for assessment purposes.

The remainder of the Milestone land had made no contribution to the sewer installation. Under § 83-71 (g) of the Prince George's County Code the Commission was obliged to permit connection and to proceed to assess under the then applicable law, that which provided a multi-unit classification. This it did.

> *Judgment affirmed; appellants*
> *to pay the costs.*

Mayor and City Council
of Laurel, Maryland
1159/75

N.74.572.61
E.45.071.10

9.66°53'00"E. 200.00

321.09

N.23°07'00"E.

N.23°07'00"E.

1243.97

N.69°55'20"E.
64.03

N.74.755.32
E.45.640.40

N.74.277.30
E.45.701.04

N.74.608.10
E.45.855.53

Iron pipe fnd.

dedicated by this plat

S.23°07'00"C.

218.33

N.74.654.57
E.46.059.12

355'

R.5270.2

Curve Data
R.5270.2
Δ.50°52'36"
Tan.751.51
Ch.453.51
Ch.B.S.15'05'0

R.5270.2
Δ.5'31'56"
Tan.151.
A.455:
Ch.B.5

(Curve D)

69'

260
10

188
10

N.74.404.09
E.46.011.14

BLOCK 259
10

N.74.263.78
E.45.937.51

252.35'

33.0'

S.07°24'00"W.

N.07°24'00"E. 252.35

N.82°36'00"W.

255.72

N.74.048.25
E.45.937.11

Iron pipe fnd.

269.57

N.74.035.53
E.46.205.03

BLOCK 258
10

Harold L. Poole
1224/116

BLOCK 257
10

Jesse L. Hanover
689/283

Existing Paving

S.82°36'00"E. 1000

S.07°24'00"W.

N.87°36'00"W. 1000

N.73.744.90
E.46.177.23

S.82°36'00"E.

319.84

S.18°24'40"W.

9.82°36'00"E.

BLOCK 256-B
10
.670 AC.

283

577.77

676.77

S.07°24'00"W.
370.77

LAUREL - BOWIE ROAD

LAUREL PINES COUNTRY CLUB
WWW Book 39 Plot 63

N.07°24'00"E.

N.73.413.47
E.46.4 928.77

201.05

N.82°36'00"W.

195.83

by this plat

OWNERS DEDIC
I. David Milestone, owner of P
herein and described in the Eng
hereby adopt this plan of subd
minimum building restriction
street widening to public use
There are no restrictic
trusts on the property
division, except a ci
parties in interest
their assent.
26, 1962

BARNES, J., dissenting:

I dissent because (1) my understanding of the facts differs, in part, from the facts set forth in the majority opinion and (2) the application of the applicable law to the facts, as I understand them, requires a different conclusion from that reached by the majority.

The fundamental factual error of the majority of the Court is, as I see it, in regard to the Plat, a portion of which is filed with the majority opinion. A consideration of the full Plat, as originally prepared by Matz, Childs & Associates in April 1962 for submission for the approval of the Maryland National Capital Park & Planning Commission (Planning Commission) and the Prince George's County Planning Board, shows clearly that it was for *one parcel of land only, i.e.,* 21.4064 acres which appeared on the legend in the lower right-hand corner of the Plat, as "Parcel A, Milestone Apartments, Laurel, Prince George's County, Maryland." The Engineer's Certificate in the upper left-hand corner of the Plat, signed by George W. Bushby, Registered Land Surveyor, is as follows:

> "I hereby certify that the plan shown hereon is correct; That *it is a* subdivision of all the lands conveyed by Charles R. Cover, widower and unremarried; John E. Sumter, Jr. and wife Beata S. Sumter, to David Milestone, by deed dated November 28, 1961 and recorded December 7, 1961 among the Land Records of Prince George's County, Maryland in Liber 2625 at Folio 161; That the total area included *in this subdivision is 21.4064 acres of land;* And that iron pipes indicated thus: o, are in place as shown.
>
> "The total area of street dedication by this plat is 11.077☐ of land." (Emphasis supplied.)

On the lower left-hand corner of the Plat is the following:

"MARYLAND NATIONAL CAPITAL PARK
& PLANNING COMM. PRINCE GEORGES
COUNTY PLANNING BOARD
APPROVED: *June 20, 1962*

(s) *John A. Schribel*   (s)   *Jesse F. Nicholson*
     Chairman—Acting       Secretary—Treasurer

M.N.C.P.&P.C.   RECORD FILE No. *5-62135"*

There is a further notation stating:

"RECORDED:          July 11, 1962
PLAT BOOK:          WWW 44
PLAT NO:            59"

The "Owner's Dedication" appearing to the left of the legend of the engineer in the lower right-hand corner of the Plat is as follows:

"I, David Milestone, owner of the property shown hereon and described in the Engineer's Certificate hereby adopt this plan of subdivision, establish the minimum building restriction lines and dedicate the street widening to public use.

"There are no suits of actions, leases, *liens* or trusts on the property included in this plan of subdivision, except a certain deed of trust and the parties in interest thereto have below indicated their assent." (Emphasis supplied.)

This "Owner's Dedication" was signed by David Milestone, owner, and was dated March 26, 1962. The trustees under the deed of trust mentioned and the note holders signed under the heading "We hereby assent to this plan of subdivision."

In short, *none* of the notations "BLOCK 256 A" and similar so-called "block and numbers" (all with the figure '10' under the Block number) with the proposed broken dividing lines, the heavy black line marked "Sewer Main" and the two heavy black lines in "Block 256 B" appeared on this original subdivision plat. These notations were *later* placed upon a *copy* of this subdivi-

sion plat by the Washington Suburban Sanitary Commission, presumably for use in the present litigation. There is an affidavit of *February 19, 1969, added* under the Engineer's Certificate which, after the Jurat, is as follows:

> "I HEREBY CERTIFY, that on this *19th* day of February, 1969, before me, Stanley B. Watson, a Notary Public for the State and County aforesaid, personally appeared William V. Ryon, Supervisor of Assessments, for the Washington Suburban Sanitary Commission, and made oath that this plat entitled 'Milestone Apartments', shows Block numbers and respective front foot measurements for each Block *as established* for this Milestone property in WSSC records maintained for front foot benefit assessment purposes." (Emphasis supplied.)

The Washington Suburban Sanitary Commission (WSSC) has pointed to no provision of the law and none appears in the majority opinion which purports to authorize the WSSC to subdivide further or differently a single parcel of subdivision land approved for subdivision by the Maryland National Capital Park and Planning Commission and duly recorded pursuant to the Laws of Maryland, 1959, Chapter 780, Sections 70-74 (See Code of Public Laws of Prince George's County, 1963, § 59-75 to § 59-79).

So far as the record in this case is concerned and so far as an examination of the law applicable in 1962 shows, these purported divisions into "blocks" are entirely intra-office "subdivisions" by the WSSC and have no binding or other effect upon the duly approved and recorded subdivision plat.

While the WSSC did have the statutory authority to assess "any irregular shaped lot having only one frontage" in the manner it determined "to be reasonable and fair," 1953 Code of Public Local Laws of Prince George's County, Section 1571 (d), there is no law or authority

for the majority position that the WSSC can administratively determine to divide a *single* privately owned lot into both abutting and non-abutting parcels, as was allegedly done here. In fact, the law and logic dictate otherwise. The 1953 Code of Public Local Laws of Prince George's County, Section 1571 (d), *supra,* states that ". . . all lots in these classes [subdivision or business classification] *shall* be assessed for their full frontage even though a water main or sewer may not extend along the full length of any boundary." (Emphasis added.) This language clearly indicates that what the WSSC determined to be the full frontage of the Milestone tract in 1962, was in fact the benefit to the whole 21 acre parcel and not merely to a portion of that parcel. Further, Section 1572 (a) of the 1953 Code of Public Local Laws of Prince George's County states that the WSSC "shall cause to be stamped upon the Treasurer's books of the respective counties, annually, opposite the properties or owners listed therein which are subject to a front foot benefit charge . . . the annual front foot benefit charge levied against said properties, noting in said book the total front foot benefit charge." Nothing is said about *portions of such properties* levied against. Section 1572 (c) additionally states that "all property subject to said front foot benefit charges" shall be sold in the same "manner as said properties are sold for County Taxes" upon failure to pay the assessment. The plain meaning of Section 1572 is that front foot levies are a recorded lien and encumbrance upon the *whole* property as listed in the county treasurer's books.

Assuming *arguendo* that the words "fair and reasonable" could be construed to allow the WSSC to apportion the Milestone property for both purposes of levy and lien, and assuming this were done in the county treasurer's books, there is still the necessity of finding that the WSSC constructed its division lines within a precise, logical, and consistent methodology. In the instant case, there appears no consistent or logical method by which the WSSC divided up the Milestone tract into parcels.

Neither are there dividing lines drawn with any precision. In fact, the WSSC lines have no mentioned courses or distances and are obviously drawn so that they do not even enclose a definite parcel of the Tract. For example, where do "parcels" 188, 260, and 259 end and where does "old Parcel" 256 and now "new Parcel" 256 A begin? There are no westerly division lines for "parcels" 188, 260 and 259. How could the present owner of the whole tract, or a prospective purchaser of the whole or a part thereof, determine precisely what is subject to levy and encumbrance? There is nothing in the record presented to this Court which indicates public notice in regard to what the WSSC has done. Certainly, if this extraordinary power to construct boundaries affecting liens and encumbrances within single tracts of land was intended to be delegated to the WSSC, such a grant of power would, in my opinion, have to be granted subject to specific guides and standards. See *Marek v. Baltimore County Board of Appeals,* 218 Md. 351, 146 A. 2d 875 (1958) ; *Albert v. Public Service Commission,* 209 Md. 27, 120 A. 2d 346 (1956) ; "Administrative law in Maryland," Reuben Oppenheimer, 2 Md. Law Rev. 185, 199 (1938). In this case no guides or standards have been shown, nor did the WSSC in its brief or at the argument present any authority purporting to give it power to independently subdivide a single tract of property for front foot benefit charges. Clearly, the burden is upon it to do this where its purported "subdivisions" of the single parcel upon its face appears to be arbitrary, unreasonable, and capricious.

It seems clear to me that, in the present case, the property owner was seeking to ascertain and to *pay all sewer and water benefit charges* on the *entire* 21 acre tract so that the 1962 and subsequent charges would not be liens or encumbrances on the tract, the owner having stated on the subdivision plat in the "Owner's Dedication" that there were no "liens" on the tract except the deed of trust referred to in his "Owner's Dedication." He did not complain about the change of classification of the 21 acre

tract from its then lowest classification, "small acreage" to the then highest classification, "business or industrial" or the substantial increase in the amount payable.[1] The receipt given by the WSSC on June 6, 1962, recites that it had received of the owner $12,873.85 "For: Redeeming effective Jan. 1, 1962, water & sewer front foot benefit charges levied against 21.3705 acres of land (Parcels 188/10, *256/10*, 259/10 and 260/10), in the 10th (Laurel) Election District, Prince George's County, assessed to David Milestone." (Emphasis supplied.)

It will be observed that the recitation is for water *and* sewer front foot charges levied against the *entire parcel of 21.3705* acres. The intra-office "parcels" are put in parenthesis and when their respective acreages are added together they total approximately 21.3705 acres. I disagree with the statement in the majority opinion that this receipt is "ambiguous." It could hardly be clearer. There is no qualification whatever indicating that any water or sewer charges remain open on any of the "parcels" or upon any portion of the entire tract; indeed both water and sewer charges on the whole tract are specifically stated to be included in the receipt for the $12,-873.85 and the WSSC accepted the owner's check for that amount and gave him the receipt to which reference has been made. In my opinion, this payment and receipt discharged the owner's liability for water and sewer charges on the entire tract, released the tract from any liens or encumbrances present or future for such charges and foreclosed the WSSC from attempting to levy any benefit charge thereafter upon any portion of the tract.

The majority states in its opinion:

"Had the Commission [WSSC] in 1962 made a sewer benefit charge assessment against Mile-

---

1. It was necessary for the WSSC to change the classification of the 21 acre tract from "small acreage" to "business or industrial" in order to permit the prepayment or redemption of the unpaid balance. *Morris v. Ehlers*, 211 Md. 23, 28, 124 A. 2d 776, 779 (1956). See § 1571 (f) of the 1953 Prince George's County Code. See *District Title Ins. Co. v. U. S.*, 169 F. 2d 308 (D.C. Cir. 1948).

> stone for the front footage of block 256 on the Laurel-Bowie road on the theory that the sewer by coming to the edge of block 256 (see plat) was available for the entire block, and had Milestone then proceeded to redeem or extinguish the benefit charge thus assessed, then we would agree that the Commission would now be foreclosed from levying a benefit charge on the basis then used."

I have already indicated that, in my opinion, the WSSC had no authority by law to make any "subdivision" of the tract into "parcels" for purposes of benefit assessments, but assuming *arguendo* that it did, it seems clear to me that the WSSC did indeed include "Parcel" 256 in its assessment for both water and sewer benefit charges for the very good reason that it so stated in its receipt and accepted the owner's $12,873.85 payment on the basis of the assessment of both water and sewer charges on the entire tract. Indeed, to make it doubly clear, WSSC specifically mentioned "Parcel" 256 as one of those "parcels" included in the whole tract to make up the total acreage of 21.3705 acres. WSSC recognized in the receipt what the then applicable law (Section 1571 (d) of the 1953 Code of Public Local Laws of Prince George's County) mandatorily *required* it to do.

Not only is there no ambiguity, in my opinion, in the receipt but when the purpose of obtaining an ascertainment of the total amount of both water and sewer charges on the entire tract is considered, there seems to me to be no doubt whatever that both parties—the owner and WSSC—intended to pay and collect, respectively, the *entire* water and sewer charges *upon the entire tract*. The statutory law then in effect in regard to redemption indicates this to me.

The Laws of Maryland, 1957, Chapter 585 amended Sub-section (f) of Section 1571 of the 1953 Code of Public Local Laws of Prince George's County to read as follows:

"(f) Said benefit charge shall be paid annually, beginning from the time of the levy thereof, by all properties located as above specified, for a period of years co-extensive with the period of maturity of the bonds out of the proceeds of which such construction was done; [provided, however, that any property owner may, at his option, within one year from the time said front foot benefit charge is levied, extinguish the same by the payment in cash, in one sum, of the proportion of the estimated cost of the project, considered as a part of the whole system of which the construction abutting upon his property is a part, represented by the number of front feet which he is assessed, with interest at the rate of six per centum per annum from the date of said levy, less any annual payment that may have been made thereon. The Commission, however, in estimating said cost for the purpose of extinguishment may add thereto a reasonable margin to protect itself against possible changes in the cost of construction and loss of interest. All sums received under such plan of extinguishment shall be preserved intact by said commission less the payment of the proportion of interest and sinking fund properly chargeable to the amount so received and used for future construction, and provided, further, that any property owner, whose property is classified under business or industrial, or subdivision, may, at his option, at any time during the life of said benefit charge, extinguish the same by payment in cash of an amount which, if put at interest at three and a half per cent, compounded annually, would yield an annuity equal to the annual assessment at the base rate and disregarding any allowance for excess, for the period for which said benefit charge has yet to run plus any charges

in default,]. Said benefit charge may be extinguished or redeemed, at any time, upon the payment to the said Commission of a sum equal to the amount of said annual benefit charge multiplied by the number of years that it has yet to run, less the interest, at the rate of interest of the bonds out of the proceeds of which the construction upon which said benefit charge is based, was done, calculated annually on the amount of such annual front benefit charge; and upon the receipt of such sum, or sums, from the extinguishment or redemption of one or more front foot benefit charges, the Commission shall purchase and cancel one or more bonds out of the series of bonds issued for the purpose of the construction which was the basis of said front foot benefit charge. The Commission is hereby authorized to make up any deficiency in the purchase of a bond or pay a premium if required, out of any surplus funds available."

If this were not the intent, what possible good would it be for a land owner to seek to redeem such charges, remove the lien and encumbrance of these charges from the land and then proceed to financing the development of the land? Then too, if the WSSC can at a later date and notwithstanding its charge and acceptance of payment for the sewer charges, seek to impose other additional charges based upon a later classification, such action may well result in a serious disturbance of covenants, warranties and the like given in good faith in connection with the financing or even the sale of the property in question. The purpose of the redemption statute was obviously designed to prevent this. In my opinion, the decision of the majority frustrates this important purpose of the redemption statute.

The calculation and assessment of the sewer charge is to apportion, as provided in the applicable statutes, the cost of the sewer improvement over the period of the

bonds required to be issued to install the improvement, in order that those property owners who benefit from the improvement will pay for the improvement, rather than the general taxpayers of the municipality in which the improvement is made. When this is calculated and apportioned, there cannot thereafter be an *additional assessment* for the "benefit" which has been *wholly apportioned as required by law*. See *Washington Suburban Sanitary Commission v. Scrivener*, 153 Md. 68, 74-77, 137 A. 492, 495-496 (1927).[2] In *Manor Real Estate Company v. The Jos. M. Zamoiski Co.*, 251 Md. 120, 246 A. 2d 240 (1968), in which we held that a benefit charge of the WSSC was an encumbrance upon the parcel of land sold *for the entire period* of the benefit charge, Judge McWilliams aptly stated for the Court:

"That the benefit charge of WSSC is an encumbrance upon property served by its facilities seems to us to be a proposition which requires by way of proof nothing more than serious reflection upon the purpose for which WSSC was established, how it goes about accomplishing that purpose and the statutes authorizing and directing it to do what it does. Stated sim-

---

2. The General Assembly, by the Act of 1927, Chapter 506, *itself* determined that the charge made by WSSC in 1925, declared invalid by this Court in the Scrivener case, was reasonable and that prior benefit charges were a lien upon the properties involved. This Act of 1927 was sustained as constitutional by a majority of this Court, two Judges (Parke and Offutt, JJ.) dissenting in Washington Suburban Sanitary Commission v. Noel, 155 Md. 427, 142 A. 634 (1928), but it should be noted that the unanimous determination by the Court in the Scrivener case was not impaired or overruled in the Noel case. The Noel case is cited in the majority opinion as indicating that subsequent assessments of benefit charges may be permitted, but the Noel case does not hold that this can be done by the *WSSC*, and indeed it is clear from the applicable statute, that the WSSC is not empowered to do this. See § 1571 (b) of the 1953 Prince George's County Code which provides:

"The front foot benefit herein levied shall not be increased nor shall any additional front foot benefit charge be levied against the property upon which there had been levied a front foot benefit charge as of December 31, 1926."

ply the business of WSSC is to construct (or acquire) water mains and sewers which the Legislature has 'declared to be a benefit to all property abutting the same.' The funds required for the construction (or acquisition) are provided by the sale of bonds. To raise the money to retire the bonds WSSC 'is empowered and directed to *fix and levy a benefit charge upon all abutting property.*' (Emphasis added.) The benefit charge is to 'be paid annually, beginning from the time of the levy thereof, by *all properties* * * *, for a period of years coextensive with the period of maturity of the bonds out of the proceeds of which such construction [or acquisition] was done.' (Emphasis added.)

"A significant feature of the benefit charge, as earlier noted, is that it 'may be extinguished or redeemed, at any time' and upon such redemption or extinguishment WSSC is required to use the amount paid to 'purchase and cancel one or more' of the bonds. Also having significance is the requirement that 'the benefit charge shall be paid and extinguished,' in full, whenever property subject to it is acquired for public use by 'the State, county or any municipal corporation, commission, board, or * * * [other agency].'

"Manor insists that the benefit charge is in reality a tax. As earlier noted, it points to the statute requiring that, for purposes of collection, the benefit charge shall be treated as County Taxes. But there are important differences between real estate taxes and WSSC benefit charges. Taxes are levied annually; the benefit charge is levied but once. Taxes change as to amount depending on changes in the tax rate and fluctuations in the assessed value of the property; the annual instalments of the benefit charge remain constant. Taxes continue indefinitely; the annual instalments of the benefit

charge cease when the bonds are retired. Taxes cannot be 'redeemed or extinguished' by the payment of a determinable amount; the benefit charge can be so redeemed or extinguished. Taxes, except special taxes, become a part of the county's general fund; the benefit charge can be used only to amortize and service the bond issue. And however unlikely it may seem to us now, it is possible that new sources of revenue may, at some future time, result in the elimination of the tax on real estate; the benefit charge must continue inexorably to its predetermined expiration."

(251 Md. at 130-131, 246 A. 2d at 245-46.) (Additional emphasis added.)

In other words, the "benefit" is fixed by the cost of the improvement thus assessed. What the WSSC is attempting to do in this case is, in effect, to impose a sewer maintenance or use tax in the guise of a "benefit assessment" and, in my opinion, it has no power to do this.

Not only has the WSSC been given no power to "subdivide" a parcel of land in a single ownership approved as a single parcel on a plat approved by the Planning Commission and duly recorded, so as to make a part of the land "abutting" and other parts "non-abutting," but the attempted exercise of such nonexistent power *could* gravely impair the security of the bonds issued by the WSSC to finance the installation. As already observed, the *whole cost* of the installation is to be apportioned upon all land which abuts upon the sewer line and it is contemplated that this cost be amortized over the life of the bonds and the collection of the front foot charges used to liquidate the bonds. See Section 1577 of the 1953 Code of Public Local Laws of Prince George's County and *Manor Real Estate Company v. The Jos. M. Zamoiski Co., supra,* and *Morris v. Ehlers,* 211 Md. 23, 124 A. 2d 776 (1956). To permit the WSSC to remove portions of a tract from lien or encumbrance, by intra-office sub-

division not imposing the benefit charge upon *all* of the land in a single abutting tract, would appear to deprive bidders of the maximum security for the payment of their bonds.

Then too, there is no suggestion in the record in this case that the WSSC, in notifying the County Treasurer of a benefit assessment pursuant to Section 1572 (a) of the 1953 Prince George's County Code and Section 83-72 of the 1963 Prince George's County Code, did not carry out the statutory mandate that the WSSC "shall cause to be stamped upon the Treasurer's Books. . .annually, opposite the properties or owners listed therein which are subject to a front foot benefit charge. . .the annual front foot benefit charge levied against said properties, noting in said book the *total front foot benefit charge.*" (Emphasis supplied.) It may be implied from the record and from the subdivision plat for the 21 acre tract that the Milestone property was assessed by Prince George's County for taxes as a single parcel and listed in the name of the owner as a single parcel. The notice of the front foot benefit charge was necessarily stamped on the Treasurer's Books as applicable to the entire 21 acre tract, and if there were a default in the payment of a benefit charge so that a sale of the property upon which the lien or encumbrance attached were necessary, the entire 21 acre tract would be subject to sale by the Treasurer. Certainly the Treasurer would not look merely to some portion of the tract, without a metes and bounds description and indicated as unenclosed "parcels" in the records of WSSC, for satisfaction.

In summary, it is the whole 21 acre tract to which the lien or encumbrance attaches and it was to remove that lien or encumbrance upon the entire 21 acre tract that the owner sought to and did redeem all of the benefit charges.

The WSSC also has no power, in my opinion, to attempt to apply retroactively the provisions of the 1963 legislation in regard to multi-unit classes created by that

legislation but not in effect in 1962 when the assessment was made and the redemption occurred. The Courts have frequently held that statutes are presumed to be intended to operate prospectively and this presumption is found to be rebutted *only* if there are clear expressions in the statute to indicate the contrary. *Bell v. State,* 236 Md. 356, 204 A. 2d 54 (1964) and cases cited therein.

There is nothing in the 1963 legislation indicating an intended retroactive application. Indeed, Sec. 71-19, already quoted, requires that the assessment for each class of property shall be based upon "the approximate cost of such construction as an integral part of the whole system," indicating to me that that legislation was not intended to apply to the cost of construction which had previously been apportioned and assessed. No legislative intent is manifested *to collect more than once* for the same project; the contrary is indicated. I would have grave doubts that any attempt at collection of benefits over and above the cost of the improvement as an integral part of the whole system would be constitutional in the light of Section 15 of the Declaration of Rights of the Constitution of Maryland. See *Leser v. Wagner,* 120 Md. 671, 87 A. 1040 (1913) *aff'd* 239 U. S. 207, 36 S. Ct. 66, 60 L. Ed. 230.

I am of the opinion that the property owners had a right to connect with the sewer line at the point where the tract abuts the Laurel-Bowie road as they were owners of the abutting property. The provisions of Section 83-71 (g) of the 1963 Code of Public Local Laws of Prince George's County, in regard to charges for a connection with a sewer by a property owner whose property does not abut on the sewer, have no application, in my opinion, in the present case. The property in this case is *"abutting property,"* as already mentioned. I would reverse.